## MURRAY v. AIKEN, &c., COMPANY.

1. RES JUDICATA—INTEREST.—A surety company having been held liable on appeal for the default of its principal (reversing the Circuit decree), less the balance due by the principal to the assured, the Circuit Court afterwards properly held the surety company liable for interest on its indebtedness, from the date of demand, to an amount not exceeding the penalty of its security bond.

2. IBID.—IBID.—CASE CRITICISED.—In naming the figures of the balance for which the surety company would be liable, this court, on the former appeal (37 S. C., 488), did not adjudicate upon the question of interest on such balance, but merely used the figures as an illustration of the principles upon which the liability was to be determined.

3. APPEAL COSTS—LOSING PARTY.—Where the principal issue on an appeal

is between codefendants, and it is decided substantially in favor of the defendant, appellant, against the defendant, respondent, but not for the entire sum claimed, this defendant, appellant, is entitled to have the costs of appeal taxed in his favor against the defendant, respondent, who must be regarded as the losing party on appeal, and not against the plaintiff.

Before FRASER, J., Aiken, April, 1893.

This was an action by Joseph E. Murray against the Aiken Mining and Porcelain Manufacturing Company, the Fidelity and Casualty Company and the Bank of New York Banking Association. See 37 S. C., 468, for the former appeal. So much of the Circuit decree as relates to the question of the appeal costs is fully extracted in the opinion of this court; so much as relates to the question of interest was as follows:

In *Union Bank* v. *Sollee*, 2 Strob., 390, it was decided, that in an action of debt on the official bond of the cashier of a bank for overdraft, the bank was entitled to interest from the time the cashier went out of office, or from a demand if one had been made earlier. I am of opinion that the plaintiff is entitled to recover against Murray interest on $3,934.76 from the 26th September, 1888, when he was directed to deposit the money in the Aiken Bank, and refused to do so, to the 18th January, 1893. This amount, calculated at seven per cent., would amount to $1,192.10, but the liability of the Fidelity and Casualty Company is limited to so much of the interest as will, with the amount already paid ($3,934.76), amount to $5,000—that is to say, to $1,065.24.

It is claimed that, by the decision of the Supreme Court, the amount to be paid by the Fidelity Company to the bank is fixed at $3,934.76, and that the Circuit Court cannot add to this amount the interest which the Supreme Court has not allowed. There is no doubt that a judgment of the Supreme Court modifying a judgment of the Circuit Court is the final judgment in the cause, and it is not in the power of the inferior court to alter it in the slightest particular. It is remitted, not to be reheard in, but to be enforced by, the Circuit Court. The remittitur which section 12 of the Code directs to be sent to the Circuit Court must be the guide of the Circuit

Court in executing the judgment or decree on which it is issued. Where the direction contained in it is precise and unambiguous, it is the duty of the Circuit Court to carry it into execution, and not to look elsewhere for authority to change its meaning. Where there is uncertainty or ambiguity in the mandate, the court below have unquestionably the right to resort to the opinion of the Supreme Court delivered at the time of the decree, in order to assist them in expounding it. *West* v. *Brashear*, 14 Peters, 51.

Now, in this case, what was the judgment of the Supreme Court? It is found in these words, which are embodied in the remittitur: "It is the judgment of this court, that the decree of the Circuit Court be modified on the principles herein announced." What principle was announced on the point we are now considering? This, and this only, that in an equity suit like the present, Murray has the right to set off against the claim of the company for the money embezzled by him the amount which the company owed him at the time. It is true, the justice who delivered the opinion used the figures which had been established by the evidence as an illustration of the principle just as he immediately afterwards used the figures, as reported in the *Bank* v. *Heyward*, for the same purpose. I am of opinion that the decree of the Supreme Court was not intended to fix the amount to be paid by the surety, but to fix the principle which must be applied in ascertaining that amount.

And I am confirmed in this by the fact that the question of interest was not, and could not have been, brought to the attention of the court, because the Circuit decree had denied the right of the bank to recover anything from Murray's surety. On the appeal from that decree the question of interest could not properly arise, and I do not believe that the Supreme Court intended to pass upon this question, and take away the legal right of the bank to interest without giving it an opportunity to be heard. I have no doubt of my right to entertain this question now, as for the first time raised in the case. *Jones* v. *Massey*, 14 S. C., 307.

*Messrs. Croft & Chafee,* for appellants.

*Mr. Samuel Lord,* contra.

September 16, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This case has been in this court before. The following is a statement of case for the Supreme Court: It was commenced for the purpose of settling the affairs of the Aiken Mining and Porcelain Manufacturing Company, an insolvent corporation. The answers in the cause presented a controvery between *two* of the defendants therein, viz: appellant and respondent above named, in regard to the liability of the former to the latter, claiming as assignee the benefit of the bond of the former to the said insolvent company, guaranteeing the fidelity of its secretary and treasurer. The decree of the Circuit Court, made July 23, 1891, was adverse to the respondent herein, the Bank of New York, who thereupon appealed to the Supreme Court. The Supreme Court on November 7, 1892, made a decree setting out fully the said controversy, modifying the circuit decree in regard to the controversy in favor of the said respondent, the Bank of New York. The decision concludes as follows:

"Now, therefore, under the terms of its contract, the defendant, Fidelity Company, must be prepared to answer for the default of the assured; but there must be this limitation thrown about its liability, namely, it must only be required to pay the difference between $6,000 and the sum of $2,065.24—that is to say, it must pay the sum of $3,934.76. It is proper that we should explain this result. This is an equity suit, and, therefore, we must apply its principles. When $6,000 of the money of the Aiken Company passed into the hands of its secretary and treasurer, that corporation was his debtor in the sum of $2,065.24, and upon the principles advanced in the case of *Bank* v. *Heyward,* 15 S. C., 296, we think this result will follow. In the case last cited, the teller was dismissed from his office, and on his settlement with the bank retained from the funds in his hands the amount he conceived the bank owed him as a salary for the year, $1,500; but it was determined that only

$250 was due him, and judgment was duly proved against him for $1,250. Here the secretary and treasurer was dismissed from his office. He claimed, though, that the company was his debtor, and in this very action the amount he claimed of the company has been allowed him. * * * It is the judgment of this court, that the decree of the Circuit Court shall be modified on the principles herein announced, and in all other respects confirmed. Let the cause be remanded to the Circuit, with directions to carry into effect the modification herein provided."

The appellant herein, the security company, then paid the sum of $3,934.76, without prejudice of the latter to its claim for appeal costs and disbursements, and interest on said sum of $3,934.76. The amount of such costs of appeal and disbursements were taxed by the clerk at $224.90, and there is no dispute as to items and amounts. The clerk, however, decided that these costs should be taxed against Murray, the plaintiff in the original case, as follows: "The Bank of New York and the Fidelity and Casualty Company were parties defendant. The case was tried in the Court of Common Pleas, and afterwards on appeal by the Supreme Court. The Bank of New York to some extent reversed the decision of the Circuit Court. It is now claimed by the Bank of New York that its codefendant, the Fidelity and Casualty Company, should pay the costs and disbursements incident to the appeal; the Fidelity and Casualty Company deny their liability to pay said costs. The case is one in equity. J. E. Murray is the plaintiff, and certainly one of the principal parties to the action. He brought the action, and it seems plain to me that he should pay the costs, and I so adjudge. There is nothing either in the Circuit decree, or in the opinion of the Supreme Court, which adjudges that the Fidelity Company should pay the costs to their codefendants, the Bank of New York. I, therefore, fail to see what right the Bank of New York has to claim that such company should pay the costs; hence I decline to tax the costs against said company, but, as above stated, do adjudge that the costs be taxed against the plaintiff. No dispute is made as to the amount of the costs and disbursements, and they are taxed as follows, to wit:

"Disbursements: Paid clerk of court for copy served, $7.65; Walker, Evans & Cogswell, for printing record, $140; preparing case, $10; appeal to Supreme Court, $15; argument in Supreme Court, $20; printing argument for Supreme Court, $31.95; total, $224.90."

The Bank of New York filed the following exceptions to said taxation: I. That the clerk erred in finding that the said costs and disbursements should be taxed against the plaintiff, because they all grow out of, and belong to, a controversy between two of the defendants, to wit: the Fidelity, &c., Co., and the Bank of New York, and the case in the Supreme Court was substantially between these parties alone. II. That the clerk erred in not holding that said costs and disbursements should be taxed in favor of said bank and against said Fidelity Company, for the aforesaid reason, and because the said last named company was the losing party on said appeal. 、

Thereupon the cause was again brought before the Circuit Court of Common Pleas for Aiken County, his honor, Judge Fraser, presiding, who held: (1) that the New York Bank was entitled to recover against Murray, interest on $3,934.76, from September 26, 1888, when he was directed to deposit the money in the Aiken Bank and refused to do so, to January 18, 1893. This amount calculated at seven per cent. would amount to $1,192.10; but the liability of the Fidelity Company is limited to so much of the interest as will, with the amount already paid, amount to $5,000—that is to say, $1,065.24. (2) His honor held as follows in reference to the question as to who was liable for the appeal costs: "The Fidelity and Casualty Company was not an original party to the bill. In the progress of the case, and upon its own application, the company was made a party, 'for the purpose of defending its own liability,' under the bond which it had given to the Aiken Company for the conduct of Murray. By the same order the Bank of New York (to whom this bond had been assigned) was also made a party, for the purpose of asserting its rights. Thenceforward the litigation was confined almost exclusively to those parties. The decision on circuit was in favor of the Fidelity Company against the bank, and from this decision the bank alone ap-

pealed. The only respondent, as the record shows, who took an active part in the contest before the Supreme Court, was the Fidelity Company. While upon some minor points the appeal was overruled, the bank succeeded in reversing and modifying the decree in the most important particulars. In no respect was it modified in favor of the Fidelity Company. I am of opinion that the bank is entitled to the appeal costs, because it must be regarded as the prevailing party on the appeal, and that the Fidelity Company should pay these costs, because the decision was against them as active litigants."

From this decree and decision as to costs, the Fidelity and Casualty Company appeals to this court upon the following exceptions: "1. Because his honor should have sustained the order of the clerk, taxing the costs against the Bank of New York, and he erred in not so doing. 2. Because the Supreme Court in its decision did not reverse the decree of Judge Norton, but only modified it, and it did not follow as matter of law that the costs were thereby thrown against the Fidelity Company; but, to the contrary, it would follow, under such circumstances, that the Fidelity Company was not liable for costs, and his honor erred in not so holding. 3. Because the Supreme Court in its decision fixed the amount of the liability of the Fidelity Company, and did not allow interest upon the same; and it is respectfully submitted that the Circuit Judge erred by increasing such liability by adding interest thereto. 4. Because, it is submitted, the liability of the Fidelity Company upon its bond was not known until fixed by the Supreme Court, and that said defendant is not liable for interest upon such before the same was ascertained, and the Circuit Judge erred in so deciding. 5. Because the extent of the liability of the Fidelity Company upon its bond was specifically stated in the decision of the Supreme Court; such question is, therefore, *res adjudicata;* and it was error in the Circuit Court in reopening and passing upon the same," &c.

In the view which the court takes, there is really but two questions in the case. *First.* "Was it proper to charge the Fidelity Company with the interest on the $3,934.76, after it was demanded from the Aiken Company? or

is that question *res adjudicata?*" It is true, that the Supreme Court, in its first decision in the case (37 S. C., 488), did not expressly declare that the amount of Murray's default should bear interest from the time it was demanded and refused; but such was then and now is the law. See *Bank* v. *Heyward,* 15 S. C., 296, in which the recovery was had for the amount of the default, *with interest as an incident added thereto.* It is impossible to suppose that the Supreme Court intended by their *silence* as to interest to overrule in any particular the very case cited as authority for the decision then being rendered.

It is, however, insisted that the former judgment of this court, which reversed the first judgment on the circuit, without making any reference whatever to the interest on the amount recovered, must be regarded as in legal effect a final adjudication of the incidental question of interest; that it was, indeed, equivalent to an express adjudication, that the bank, as the assignee of the bond in contention, was not entitled to interest on the amount recovered. We can not accept this view. It is quite clear that the question of interest was never before Judge Norton, nor before this court on appeal, and, of course, was never actually adjudicated. On the contrary, we agree with Judge Fraser, that the matter of interest was never considered, and that by using the figures this court did not intend to fix definitely the amount to be paid by the Fidelity Company, but to fix the principles, which must be applied in ascertaining that amount, when the case went back to the circuit, under the express terms of the judgment of the court: "Let the case be remanded to the Circuit Court, with directions to carry into effect the modification herein provided." See *Jones* v. *Massey,* 14 S. C., 307, and *Busby* v. *Mitchell,* 29 *Id.,* 447.

*Second.* The other question is, whether it was proper to charge the Fidelity Company with the costs of the appeal. In cases in chancery, costs are largely in the discretion of the Circuit Judge who heard the case, but if not otherwise ordered in the judgment, follow the event of the action, and are taxed against "the losing party." Code, sec-

tion 323.   Judge Norton, who originally heard the case, made no order, of course, as to costs upon appeal from his own decree, and the Supreme Court can make no original order for costs in an equity case.   Then, was it error on the part of the Circuit Judge to reverse the clerk's taxation of the costs upon the first appeal, and charge them to the Fidelity Company? That must depend upon the issue in that appeal and "the losing party" in it.   There is no doubt that the principal issue on the appeal was between the Bank of New York as the owner of the indemnity bond and the Fidelity Company as to their liability thereon.   That question was substantially decided in favor of the bank.   The Fidelity Company was held liable on the indemnity bond, and whether the whole penalty of the bond, or a less sum on account of a set-off, was recovered, *there was a recovery*, and they must be considered as the "losing party" on the appeal, irrespective of the final result of the action.   *Cleveland* v. *Cohrs*, 13 S. C., 397; *Huff* v. *Watkins*, 25 *Id.*, 245; *Sease* v. *Dobson*, 36 *Id.*, 554.   We agree with the Circuit Judge that the bank is entitled to the appeal costs, because it must be regarded as the prevailing party on the appeal, and that the Fidelity Company should pay these costs, because it was the only respondent and active litigant in the Supreme Court, and the decision was against them.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER concurred.

MR. JUSTICE POPE concurred in the result.