**In re BURLINGTON NORTHERN, INC. EMPLOYMENT PRACTICES LITIGATION.**

**Appeals of Mitchell WHITE, Claude E. Brown, Charles Taylor, and Glen L. Pulley.**

**Nos. 86–3079, 86–3155.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1987.

Decided Oct. 28, 1987.

As Amended Nov. 6, 1987.

See also, 7th Cir., 832 F.2d 430.

Jerome E. LaBarre, LaBarre & Assoc., P.C., Portland, Or., for appellants.

Christopher T. Lutz, Steptoe & Johnson, Washington, D.C., for appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

We decide this appeal today in conjunction with another appeal,[1] both of which arise from a massive class action filed under Title VII in the late 1970s alleging race discrimination against the Burlington Northern railroad. Both appeals concern a

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. *In re Burlington Northern, Inc.,* 832 F.2d 430 (7th Cir.1987).

second round of attorneys' fees sought by plaintiffs' counsel.[2] This appeal presents the question of whether two particular law firms prevailed against Burlington Northern in post-settlement allocation proceedings and in the alternative whether a consent decree and related documents give rise to a contractual right to attorneys' fees. The district court decided both issues in favor of Burlington Northern. We affirm.

## I. BACKGROUND

The early history of this case is set out in the background portion of the other appeal we decide today. This appeal arises from the fees and costs awarded to two of plaintiffs' counsel,[3] other than lead counsel, subsequent to the district court's approval of the consent decree in April 1984. Both law firms in this appeal reached settlements with Burlington Northern for fees and costs incurred in achieving the settlement of the case and entering of the consent decree. In July 1986, however, both law firms filed additional petitions for attorneys' fees for time spent in allocating the $10 million settlement fund.[4] In November 1986 the district court denied both law firms' second set of petitions for attorneys' fees and costs. The law firms appeal that denial of their petitions.

## II. DISCUSSION

Generally speaking under the American Rule the prevailing party in a legal controversy is not entitled to attorney's fees from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The American Rule does not apply, however, under certain narrow exceptions or where specific legislation or contractual agreement shifts the payment of attorney's fees to the loser. *Lowe v. Letsinger,* 772 F.2d 308, 315 (7th Cir.1985). The law firms contend that they are entitled to attorneys' fees under two of those exceptions to the American Rule: by statutory authorization in a fee-shifting provision of Title VII and by contract through the consent decree and related documents.

### A. *Fee Shifting Under Title VII*

Title VII is an example of one piece of legislation that does shift the payment of attorney's fees to the loser. In pertinent part Title VII provides:

In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee....

42 U.S.C. § 2000e–5(k) (1982). The standards applied to Title VII's fee-shifting provision are the same standards applied to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982). *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 549 n. 9 (7th Cir.1986) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983)). Consequently, we look to cases construing both of the fee-shifting provisions to decide the Title VII issue presented on this appeal.

Before awarding fees under Title VII a district court must determine whether or not the petitioner for fees is a "prevailing party." The Supreme Court has explained that " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant

---

**2.** This appeal is brought by two law firms representing a handful of plaintiffs, while the other appeal we decide today is brought by the two lead counsel appointed by the district court to represent the class. Both sets of counsel were awarded attorneys' fees in the first round by the district court, but neither is satisfied with the amount awarded in the second round.

We recognize that the named appellants Mitchell White, Claude E. Brown, Charles Taylor and Glen L. Pulley are technically the parties bringing this appeal. Throughout this opinion, however, we refer to the law firms for convenience as if they were the appellants because

these firms are the parties most directly affected by the outcome of this appeal.

**3.** Linda A. Miller, P.A., (St. Paul, Minnesota) representing plaintiffs Claude E. Brown, Charles Taylor, and Glen L. Pulley, and LaBarre & Associates, P.C., (Portland, Oregon) representing plaintiff Mitchell White.

**4.** The LaBarre law firm actually filed two additional petitions for fees: one in December 1985 for allocating the $10 million settlement fund and one in July 1986 for seeking fees in the first round.

issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Although the prevailing party in the Supreme Court's characterization is cast as one who succeeded in actual litigation, "[t]he fact that [a petitioner for fees] prevailed through a settlement rather than through litigation does not weaken [its] claim to fees." *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). When a case is settled or a disposition of claims is achieved without full litigation on the merits, we apply a two-part test to determine prevailing party status:

> Essentially, to prevail in a settled case, the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained. Secondly, the defendant must not have acted wholly gratuitously, i.e., the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless.

*Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Generally we describe our standard of review of a district court's award or denial of attorney's fees as abuse of discretion. *Lovell v. City of Kankakee,* 783 F.2d 95, 96–97 (7th Cir.1986). But when we are reviewing a decision to award or deny fees under this two-step test, where there was no full litigation on the merits, our standard of review is somewhat refined. We review the first step, the determination of whether plaintiff's lawsuit was causally linked to relief provided by defendant, under the clearly erroneous standard. *Perlman v. City of Chicago,* 801 F.2d 262, 268 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987); *Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 569 (7th Cir.1983). We do this because "[t]he first step, which requires that the lawsuit in some way have played a provocative role in obtaining relief, is a factual determination." *Harrington,* 656 F.2d at 267; *Gekas v. Attorney Registration & Disciplinary Commission,*

793 F.2d 846, 849–50 (7th Cir.1986); Fed.R. Civ.P. 52(a) ("Finding of fact ... shall not be set aside unless clearly erroneous...."). However, we review the second step, the determination of whether the plaintiffs' claims were frivolous, unreasonable, or groundless, under the abuse of discretion standard. *Gekas,* 793 F.2d at 850; *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

The dispositive factual question confronting the district court was whether or not plaintiffs' efforts at increasing their respective allocations from the settlement fund, although not part of any formal litigation on the merits, caused Burlington Northern to provide monetary relief to them. The district court found that they did not.

In the original litigation on the merits plaintiffs and Burlington Northern had settled. Burlington Northern deposited $10 million, in bank accounts held in the district court's name, to redress plaintiffs' complaints and agreed to pay plaintiffs' lawyers attorneys' fees. Plaintiffs' lawyers submitted petitions for attorneys' fees and, with the exception of lead counsel, they settled their claims for fees with Burlington Northern instead of litigating them. Then plaintiffs' lawyers petitioned for additional fees. These petitions were based on the time plaintiffs' lawyers spent in seeking increases in the amounts their particular clients would recover from the $10 million settlement fund. Because plaintiffs' lawyers had been successful in increasing their clients' amount of recovery from the settlement fund, they believed they were "prevailing parties" for purposes of Title VII. Indeed, the law firms argue that their clients had not fully "prevailed" against Burlington Northern until the final amount to be awarded from the settlement fund was finally established.

■ But it is difficult for us to conclude that the law firms prevailed against Burlington Northern in seeking a greater recovery from the settlement fund when Burlington Northern had already relinquished the $10 million for the settlement fund and then basically dropped out of the picture.

The law firms were competing for larger slices of the $10 million pie for their respective clients. If indeed they did prevail, it was at the expense of other plaintiffs and not Burlington Northern. To be prevailing parties for purposes of Title VII's fee-shifting provision, the law firms would have to have achieved some relief in the post-settlement allocation proceedings from Burlington Northern, not from fellow plaintiffs. Although we have not previously considered this specific aspect of prevailing party status, some of our former decisions in this area [5] and similar decisions in other circuits [6] implicitly recognize that a prevailing plaintiff's recovery must come from the defendant, not some other party. Moreover, the term prevailing party itself traditionally connotes a winning party and, by implication, a losing party.[7] Concededly the winning parties here were the law firms. But the losing party was not Burlington Northern. The increased amounts of these plaintiffs' awards decreased the amount available to other plaintiffs from the $10 million settlement fund; it did not

do so, however, at Burlington Northern's expense. Irrespective of which or how many plaintiffs recovered more from the settlement fund through their lawyers' efforts, Burlington Northern's liability was fully established at $10 million—no more and no less. As a result, although these plaintiffs' lawyers may have prevailed against other plaintiffs, we cannot say that they prevailed against Burlington Northern. They are not, therefore, prevailing parties for purposes of Title VII's fee-shifting provision. Consequently we hold that the district court's finding, that the law firms were not prevailing parties, was not clearly erroneous. Because the law firms are not prevailing parties they are not entitled to fees under Title VII.

The law firms protest, however, that in these circumstances they need not be prevailing parties in the traditional sense to recover attorneys' fees from Burlington Northern for post-settlement work. The law firms contend that the entering of the consent decree was the liability portion of

**5.** *See, e.g., Ekanem v. Health & Hospital Corp.,* 778 F.2d 1254, 1258 (7th Cir.1985) (holding district court's conclusion, that plaintiff was not a prevailing party, was not clearly erroneous where "the district court found that the plaintiffs' lawsuit did not 'act[ ] as a catalyst in changing *Defendants* disputed practices'") (quoting district court) (emphasis added); *Stewart v. Hannon,* 675 F.2d 846, 851–52 (7th Cir. 1982) (holding district court's finding not clearly erroneous that plaintiff was not a prevailing party where plaintiff's lawsuit did not act "as a catalyst, [n]or was it a material factor in the *defendant's* decision to change the disputed practices") (emphasis added); *Dawson v. Pastrick,* 600 F.2d 70, 79 (7th Cir.1979) (holding plaintiffs were prevailing parties because litigation "operated as a catalyst prompting the *defendants* to institute fair employment practices") (emphasis added).

**6.** *E.g., DeMier v. Gondles,* 676 F.2d 92, 93 (4th Cir.1982) (holding district court's finding not clearly erroneous that plaintiffs were prevailing parties where " 'plaintiff's actions were a catalyst which caused a *defendant* to remedy his errant ways' ") (emphasis added) (quoting *Smith v. University of North Carolina,* 632 F.2d 316, 347 (4th Cir.1980)); *American Constitutional Party v. Munro,* 650 F.2d 184, 187 (9th Cir.1981) (holding plaintiffs not prevailing parties where their lawsuit did not act as a " 'material factor in bringing about the *defendant's* action' ") (emphasis added) (quoting *Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir.1980), *cert. denied,* 449

U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981)); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 429–30 (8th Cir.1970) (holding plaintiff was prevailing party where plaintiff's "lawsuit acted as a catalyst which prompted the [*defendant* ] to take action") (cited with approval in S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912–13 (Senate Judiciary Committee Report on "The Civil Rights Attorney's Fees Awards Act of 1976")).

**7.** *Cf., e.g., Grill v. Blakeborough,* 189 Minn. 354, 249 N.W. 194, 194–95 (1933) (analyzing whether plaintiff or defendant was prevailing party by comparing conflicting claims parties asserted against each other); *Luebben v. Metlen,* 110 Mont. 350, 100 P.2d 935, 937 (1940) (holding plaintiff, who sued for more than account stated by defendant, "failed in the suit and the defendant, who stood on the account stated, was the prevailing party"); *Hart v. Casterton,* 58 N.D. 657, 227 N.W. 183, 184 (1929) (evaluating defendant's success on particular claims in relation to plaintiff's lack of success on same claims to determine which party was prevailing party); *Murray v. Aiken Mining & Porcelain Mfg. Co.,* 39 S.C. 457, 18 S.E. 5, 7–8 (1893) (deciding which litigant was losing party on appeal by analyzing which parties lined up on opposite sides of same issue and which of two opposing parties was prevailing party).

this litigation while the allocation proceedings were the damages portion. They rely on one of our previous decisions, *Bond v. Stanton*, 630 F.2d 1231 (7th Cir.1980), and two from the First Circuit, *Brewster v. Dukakis*, 786 F.2d 16 (1st Cir.1986) and *Garrity v. Sununu*, 752 F.2d 727 (1st Cir. 1984), as authority for their claim of entitlement to post-settlement attorneys' fees for ensuring relief in accordance with the consent decree, even though their efforts were not "necessary to secure compliance from a resistant party." *Garrity*, 752 F.2d at 738.

Our decision in *Bond*, however, does not help the law firms' contentions. We held in *Bond* that plaintiffs could recover attorneys' fees for post-settlement work because their efforts had been directed at the defendant and had forced the defendant to submit a revised Medicaid treatment plan. 630 F.2d at 1233–34. In this case, by contrast, the law firms' efforts were directed toward the administrators of the settlement fund, lead counsel for the class, and not at Burlington Northern. Any recovery or increase in recovery would come from the established settlement fund, at the expense of other plaintiffs and not at the expense of Burlington Northern.

Likewise, the First Circuit's decisions in *Brewster* and *Garrity*, not the law of this circuit in any event, do not help the law firms' contentions. *Garrity* was concerned with an implementation order of the district court that had been crafted from divergent proposals from the parties—it was not a consent decree or other settlement document agreed upon by the parties. 752 F.2d at 730. Following the issuance of the order, to ensure defendant's compliance, plaintiffs' post-judgment monitoring services "were rendered when disputes arose between counsel for the parties with reference to certain ... matters detailed in [the] prior Order of Implementation." *Id.* at 738. It is clear that an adversarial relationship continued to exist after judgment and the plaintiffs' efforts were directed at ensuring compliance from the defendant.

That is not the situation here. Burlington Northern settled the case by agreeing to a liability of $10 million. Any efforts by the law firms to get some of that $10 million for their clients will have no effect on Burlington Northern's liability to plaintiffs.

*Brewster*, in turn, relied on *Garrity* to hold that plaintiffs could receive post-settlement attorneys' fees for "monitoring the decree" because the consent decree there "bestowed various responsibilities on the parties." 786 F.2d at 17. Specifically, the consent decree "bound the [defendants] to establish a system for the care and treatment of mentally disabled persons." *Id.* Plaintiffs were required to monitor the defendants' efforts at establishing the required system. Here, by contrast, Burlington Northern had no further obligation or liability to provide additional relief to plaintiffs. Once Burlington Northern set up the $10 million settlement fund, its liability was established. It had no further obligation to plaintiffs.

We do not agree, therefore, that these decisions provide authority to allow plaintiffs to recover attorneys' fees even though they were not prevailing parties in the traditional sense.

### B. Contractual Claims to Fees

The law firms also argue that, apart from the fee-shifting provision of Title VII, they have a contractual right to fees arising out of the consent decree and other related documents.

Generally speaking we review *de novo* a district court's construction of contractual terms. But consent decrees are a peculiar breed of contract. "The district court's views on interpretation [of a consent decree] are entitled to deference." *United States v. Board of Education*, 717 F.2d 378, 382 (7th Cir.1983).[8] So although we review the district court's construction of the consent decree and the other documents *de novo*, we also accord some deference to the district court's views. Using

---

**8.** *See Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir.1981) ("Few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it.") (cited with approval in *Board of Education*).

that framework we review in turn each of the documents upon which the law firms rely.

### 1. Consent Decree

The law firms argue first that Article IX of the consent decree explicitly provides that Burlington Northern will pay attorneys' fees to them and that the consent decree applies prospectively as well as retrospectively.

The consent decree states: "Counsel for private plaintiffs and EEOC shall be paid their costs ... including ... reasonable attorneys' fees on all issues involved in this litigation...." It later provides that "BN will not dispute the entitlement of counsel for private plaintiffs ... to ... reasonable attorney's fees, as provided above...." The law firms argue that these sentences of the consent decree implicitly recognize that the law firms have a continuing claim to attorneys' fees for hours spent on their clients' behalf after entry of the consent decree.

■ The consent decree, however, applies only retrospectively. The first sentence of Article IX provides for the payment of fees incurred pursuant to "this litigation." From Burlington Northern's perspective "this litigation" ended when Burlington Northern entered into the consent decree. Burlington Northern paid $10 million into the district court as the exact amount of its liability. It had no further necessity, nor did plaintiffs, to litigate about liability. All that remained after the consent decree was entered, which established the full extent of Burlington Northern's liability, was for plaintiffs to receive their respective shares of the settlement fund—a process in which Burlington Northern did not participate.

Moreover, the sentence immediately following the sentence with the term "this litigation" states:

The parties shall meet and attempt to agree upon the amount of such fees and costs within fourteen days of the entry of the Decree.

As for the apportionment of the total amount of such fees and costs, Article IX further states that portions of it should be attributed by the parties to certain issues. This language reinforces the implication of the retrospective nature of the term "this litigation." To evaluate issues and apportion the total amount of fees and costs to those issues, within fourteen days of the entry of the consent decree, necessarily required the parties to look back, not ahead. The parties could not know at the time the consent decree was entered what amount of total fees and costs to attribute to issues that had not arisen and, for that matter, might never arise. We agree with the district court, therefore, that Article IX of the consent decree does not create a right to future attorneys' fees.

### 2. Administrative Order No. 2

To implement the operative provisions of the consent decree the district court issued a series of administrative orders. One of these orders, Administrative Order No. 2, sets out the procedure by which the settlement fund is managed and distributed. Essentially, the procedure operates in three ways. First, if a particular plaintiff was unsuccessful in defending or attacking an allocation from the settlement fund, Burlington Northern would not be responsible for attorney's fees for that plaintiff's lawyer. Second, if Burlington Northern did object to an allocation from the settlement fund, and a particular plaintiff was successful in his claim, then Burlington Northern would pay attorney's fees to that plaintiff's lawyer. Finally, however, if a particular plaintiff successfully sought an allocation from the settlement fund, in which Burlington Northern played no part, then Burlington Northern would not be responsible for attorney's fees for that plaintiff's lawyer.

From the existence of this established procedure set out in Administrative Order No. 2, the law firms argue that Burlington Northern is obligated to pay them attorneys' fees. They contend that the procedure evidences, on Burlington Northern's part, an "acknowledgment of responsibility for post-settlement entitlement as well as

acknowledgement of entitlement under the Consent Decree."

■ We fail to see, however, how a contractual agreement to pay attorneys' fees in carefully defined, limited situations after settlement necessarily implies an obligation to pay attorneys' fees for virtually any work performed in representing a plaintiff after settlement. Burlington Northern agreed in Article IX of the consent decree to pay attorneys' fees for work performed only before settlement. Work performed after settlement, by contrast, generally would not be compensated in attorneys' fees by Burlington Northern. The limited possibility of Burlington Northern's liability for future attorneys' fees was discussed in the procedures established in Administrative Order No. 2, with reference back to the general rule of Article IX covering future payment of fees. Those procedures limited Burlington Northern's liability for future attorneys' fees—it was not open ended. Only if Burlington Northern challenged an allocation from the settlement fund, and lost, would it be responsible for attorneys' fees. Because Burlington Northern did not challenge the allocations of any of the plaintiffs these law firms represent, we hold that the law firms have no contractual right to attorneys' fees from Burlington Northern based on Administrative Order No. 2.

### 3. Administrative Order No. 3

The consent decree was entered April 2, 1984. Five weeks later the district court issued Administrative Order No. 3 on May 11, 1984. Administrative Order No. 3 is a one-page notice to the law firms setting a deadline for filing petitions for attorneys' fees incurred "to date." The law firms argue that those two words, "to date," show that Burlington Northern is responsible for post-settlement attorneys' fees because the petition for fees could include work performed in the five weeks after settlement. The district court, however, did not impose a responsibility on Burlington Northern to pay all post-settlement attorneys' fees by allowing the law firms to submit petitions for fees incurred in the first five weeks following settlement. Rather, the district court recognized that bills for time and expenses incurred before settlement might not arrive and be processed for several weeks:

> [I]t is conceivable that plaintiff's counsel were still billing fees and costs connected with the underlying substantive litigation at the time the order was entered. It therefore is not necessary to read the order as supporting the proposition that money spent in the settlement allocation process is recoverable.

■ Merely because the district court allowed the law firms five weeks' additional time to account for billings not yet processed does not mean that Burlington Northern would be responsible to pay attorneys' fees for all post-settlement work. Consequently, we hold that the words "to date" in Administrative Order No. 3 do not impose liability on Burlington Northern to pay all post-settlement attorneys' fees incurred by plaintiffs' law firms.

### 4. Administrative Order No. 5

The law firms also argue that a "Supplemental Notice of Claim Determination and Additional Procedures" accompanying Administrative Order No. 5 "indicated the appropriateness of retaining counsel" and "required [plaintiffs] to actively litigate" their right to allocation from the settlement fund.

Burlington Northern's first response to this contention is that the law firms did not raise this argument in the district court. Our review of the record, and the law firms' failure to counter this charge in a reply brief or at oral argument, convince us that this argument was not raised in the district court. Because the issue was not raised in the district court it is waived on appeal. *Collins v. Illinois*, 830 F.2d 692, 698 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 338 (7th Cir.1987).

### 5. Attorneys' Fees Settlement Agreements

The law firms finally argue that their agreements with Burlington Northern to

settle their initial attorneys' fees claims, and the circumstances leading up to those claims, necessarily entitle the law firms to a second round of attorneys' fees.

■ Burlington Northern's settlement agreement with one of the law firms states that the agreement will have "no effect" on subsequent claims for attorneys' fees. Burlington Northern's settlement agreement with the other law firm resolves the claim for fees as of the date of settlement—it is otherwise silent as to future claims for attorneys' fees. We agree with Burlington Northern's straightforward observation: " 'No effect' means no effect. Silence is silence." In short, the settlement agreements between Burlington Northern and both law firms have no bearing on this second round of attorneys' fees.

The law firms persist, however, by arguing that the circumstances leading up to the settlement agreements entitle them to additional attorneys' fees. One of the law firms relies on its initial petition to seek fees in which it warned Burlington Northern that it would be back again to seek a second round of attorneys' fees. But such an announcement of future intent is legally inconsequential. Burlington Northern's silence in the face of such an announced intention did not bind Burlington Northern to pay subsequent attorneys' fees.

The other law firm relies on a similar argument, but it fails even to point to a written announcement of future intent. Instead, it argues:

> At the time the Consent Decree was entered into *it was understood* that there would be the necessity for further involvement of plaintiff's attorneys during the allocation hearings and other post-settlement proceedings. The *natural conclusion* would be that plaintiffs' attorneys would be further compensated.... (emphasis added).

But Burlington Northern did not necessarily share the law firm's understanding nor agree that the natural conclusion was that Burlington Northern was absolutely liable for future fees.

As a result, we hold that neither the agreements settling the initial claims for fees nor the circumstances leading up to those agreements obligate Burlington Northern to pay the law firms a second round of attorneys' fees.

## III. CONCLUSION

The law firms do not have a statutory right under Title VII to an additional round of attorneys' fees because they are not prevailing parties with respect to Burlington Northern. Neither do the law firms have a contractual right to additional fees, based on the agreements settling their initial claims for fees, the district court's administrative orders, or the consent decree itself, because none of the writings upon which the law firms rely give rise to such a right. Consequently, the orders of the district court denying the law firms' petitions for a second round of attorneys' fees from Burlington Northern are

Affirmed.