**Billy HOOPER, Plaintiff–Appellant,**

v.

**DEMCO, INCORPORATED, Defendant–Appellee.**

No. 93–3710.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1994.

Decided Sept. 28, 1994.

288

Jeffrey Spitzer–Resnick, Madison, WI, Brian Anderson, Willms Anderson, Thiensville, WI, H. Nathan Resnick (argued), West Bloomfield, MI, for plaintiff-appellant.

James R. Cole, Lauri D. Morris (argued), Richard L. Bolton, Stroud, Stroud, Willink, Thompson & Howard, Madison, WI, for defendant-appellee.

Before BAUER, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Billy Hooper,[1] brought an action against his former employer, Demco, Inc. ("Demco"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), claiming that the health plan administered by Demco had capriciously denied coverage for his HDC–ABMT cancer treatment.[2] Shortly after Hooper filed suit against Demco, the parties entered into a settlement agreement in which various charitable organizations and Demco employees agreed to provide for the costs of Hooper's treatment as part of the settlement. After the settlement was reached, the suit was dismissed with prejudice. Thereafter, Hooper's counsel, claiming that Hooper was the prevailing party, filed a petition for attorney's fees as provided for under ERISA. 29 U.S.C. § 1132(g)(1). Both sides submitted briefs and supporting affidavits on the attorney's fees question. The court denied the plaintiff's request for fees ruling that based on the record, the defendant's position in denying coverage for this type of investigational and experimental cancer treatment, was "substantially justified." We affirm.

## I. BACKGROUND

In 1990, Billy Hooper, an employee of the defendant, Demco, was diagnosed with multiple myeloma,[3] a form of cancer that attacks the bone marrow and has a high mortality rate. In the early treatment stages, Hooper's chemotherapy treatment proved effective, and the disease went into remission, but recurred in the fall of 1992. At this time, Hooper's doctors recommended High–Dose Chemotherapy coupled with an Autologous Bone Marrow Transplant ("HDC–ABMT"). In two recent cases, this court has discussed the HDC–ABMT treatment in detail. See *Bechtold v. Physicians Health Plan,* 19 F.3d 322, 324 (7th Cir.1994) and *Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1407 (7th Cir.1994). We stated that HDC–ABMT is a two-step procedure in which the physicians extract ("harvest") the bone marrow cells

---

1. The action is now being pursued by the estate of Billy Hooper who passed away prior to this appeal.

2. Demco, relying on language in the plan excluding coverage for "Experimental or Investigative Treatment" denied coverage.

3. Multiple myeloma is defined as "a disseminated malignant neoplasm of plasma cells characterized by multiple bone marrow tumor foci[.]" Dorland's Illustrated Medical Dictionary, 27th ed. (1988), at 1087–88.

from the patient's body and temporarily place them in frozen storage. Next, the patient undergoes a near-lethal cycle of high-dose chemotherapy in an attempt to destroy the cancer cells. Because the high-dose chemotherapy also attacks the bone marrow cells, it is necessary to withdraw some of the patient's bone marrow prior to undergoing the high-dose chemotherapy procedure. Without initially removing a portion of the patient's bone marrow cells, the high-dose chemotherapy would be lethal because of its myeloblative effect (high-dose chemotherapy destroys bone marrow cells which produce blood cells (red and white as well as platelets) rendering the patient highly susceptible to infection and possible death). After completing the administration of the high-dose chemotherapy, the patient's own ("autologous") stored marrow is reinfused intravenously into the blood stream to relieve the patient from the toxic effects of the chemotherapy. HDC–ABMT has proven effective in treating certain cancerous blood diseases such as leukemia and Hodgkin's disease. To date HDC–ABMT's effectiveness has not been universally established and thus not universally accepted as a usual and normal treatment for solid-type tumors, (as in *Fuja* and *Bechtold*), or for multiple myeloma.

*The Demco Health Plan*

Demco, has a self-funded health plan (the "Demco Plan") overseen by an independent professional claims administrator, the Traveler's Plan Administrator ("TPA"). TPA's job is to evaluate each case presented to the plan and determine whether the proposed treatment is covered by provisions in the Demco plan. TPA had approved payment of all of Mr. Hooper's cancer treatments and procedures up to the request for approval of and reimbursement for the HDC–ABMT.

The Demco plan provided in relevant part:
*"General Exclusions and Limitations*
Unless specified otherwise in the Plan, covered charges will not include and no benefit shall be payable for: ... Experimental or Investigative Treatment, or treatment, service or supply not recognized as generally accepted and appropriate in the treatment of the condition by the American Medical Association." [4]

Under the clear terms of the Demco plan, TPA could not authorize funds for any procedure that was "experimental" or "investigative." TPA contacted UMAC, Inc. ("UMAC"), an independent medical review organization, to determine whether HDC–ABMT was investigative or experimental and thus not covered under the plan. UMAC advised that only a small number of multiple myeloma patients had been treated with bone marrow transplant and high-dose chemotherapy and further advised that the procedure was not in widespread use,[5] nor was it generally accepted in the medical research arena as a proven and effective treatment for multiple myeloma.[6] After its own research and evaluation, UMAC concluded that HDC–ABMT as a treatment for multiple myeloma was "experimental" and "investigate" as defined in the Demco plan.

TPA sought a second opinion from the Medical Review Institute of America ("MRIA"), another independent medical review organization. MRIA found, after a review of the current medical writing and research data available, that HDC–ABMT was not a generally accepted treatment for multiple myeloma. MRIA further determined that there was insufficient documentation of

---

**4.** As we observed in *Fuja* when facing the same issue of health plan interpretation:

"This clause in the contract clearly excludes coverage for treatment that is of uncertain medical efficacy and subject to ongoing, recognized and accepted medical research procedures.... The uncontradicted expert testimony and documentary evidence presented to the trial court establishes that HDC/ABMT is still of uncertain medical value and is presently being researched at a number of leading medical colleges and oncology research centers throughout the country."

18 F.3d at 1415.

**5.** As we have discussed before, a contributing factor to the lack of widespread use is the cost of the treatment itself. *See Bechtold,* 19 F.3d at 324–25 and *Fuja,* 18 F.3d at 1412.

**6.** One reason that the treatment was not universally accepted might well be because at the time of TPA's investigation there was a five to twenty percent chance that the treatment itself would be immediately lethal to the patient undergoing HDC–ABMT.

the effectiveness of HDC–ABMT and insufficient length of follow-up studies, to conclude that HDC–ABMT was an effective treatment for this type of cancer. In the absence of medical and scientific documentation that HDC–ABMT would either prolong Hooper's life or control the spread of the disease, MRIA concluded that the HDC–ABMT procedure for multiple myeloma was still deemed to be experimental and "not generally accepted as a standard medical treatment" for multiple myeloma under the terms of the Demco plan. Both UMAC and MRIA are considered by TPA to be reputable organizations which conduct independent evaluations of medical treatments and procedures. The opinions of these organizations are frequently relied on by health plan administrators and organizations to determine coverage questions.

On May 25, 1993, TPA sent written notification to Hooper stating that based on the independent reviews of both UMAC and MRIA, the Demco Plan would not pay for HDC–ABMT because TPA concluded that the HDC–ABMT treatment was still considered to be experimental and in the investigative stage of development.

One month later, in a letter dated June 23, 1993, Hooper's physician, Dr. Longo, requested a re-review of TPA's decision. Dr. Longo provided TPA with various medical literature discussing the most current studies based on the usage of HDC–ABMT and requested that TPA reconsider its decision in light of these new studies. After review, TPA concluded that the literature failed to support Hooper's claim that HDC–ABMT was generally accepted as a standard medical treatment, but nonetheless, TPA turned the claim and the new information over to UMAC for its evaluation.

By letter dated July 21, 1993, UMAC again advised TPA that the use of HDC–ABMT was still considered investigational. On August 4, 1993, TPA advised Mr. Hooper and Dr. Longo that re-review of the request for funding had been rejected as HDC–ABMT

was not a covered treatment for multiple myeloma under the Demco plan.

At this time, Hooper commenced this ERISA suit in the Western District of Wisconsin challenging the denial of coverage. Demco defended its actions relying on the terms of the contract as well as certain medical literature and expert opinions concerning the status of HDC–ABMT. At the same time, Demco spearheaded a charitable fundraising effort to pay for Hooper's treatment.[7]

*Evidence Regarding the Status of HDC–ABMT*

After the suit was filed, Demco consulted with Dr. Raymond B. Weiss, Chief of Medical Oncology at the renowned Walter Reed Medical Center in Washington, D.C. Dr. Weiss informed Demco that HDC–ABMT for multiple myeloma was not generally accepted as a standard medical treatment. In an effort to obtain treatment for Hooper, Dr. Weiss attempted to enroll Hooper in an HDC–ABMT study at the National Institute of Health, but was unsuccessful.

The record, developed in the pre-settlement discovery, contains opinions by various recognized cancer experts including the plaintiff's own oncologist, Dr. Philip Greipp, as to the effectiveness of HDC–ABMT. In his deposition, Dr. Greipp himself characterized the treatment as "very controversial." Dr. Greipp testified that HDC–ABMT was still in its investigative stages:

"There is increasing acceptance among scientists and people who do research in this area that this is effective treatment. Everybody believes it's much more effective treatment than standard therapy, and that therefore it should be given a *trial* as initial chemotherapy in the three major cooperative groups, and Blue Cross–Blue Shield has basically agreed to therefore support it as initial therapy within the context of this trial. This is an *investiga-*

---

7. Demco employees, Demco, TPA, Manufacturers Life Insurance, the Children's Organ Transplant Association, and the University of Wisconsin Hospitals and Clinics, agreed among themselves to pay for Hooper's treatment on June 29, 1993, one day before the hearing on plaintiff's motion for a preliminary injunction preventing Demco from denying coverage. Demco itself agreed to match the donation of any executive or employee up to $10,000 per person.

*tion* and we'll see—*we don't know what the outcome will be.*"

Greipp deposition at p. 58, (emphasis added).

Hooper's suit against Demco was settled on August 30, 1993, after a number of organizations (see footnote 7) agreed to underwrite and, in effect, cover Hooper's expenses for his treatment. Hooper underwent HDC–ABMT treatment very shortly thereafter, but the treatment was ineffective and Hooper passed away before this appeal.

The question left unresolved after settlement was whether Hooper's estate was entitled to attorney's fees. In the district court's order dismissing the case in light of the settlement agreement, the judge scheduled a hearing to determine if the plaintiff was entitled to attorney's fees as provided for under ERISA § 502(g)(1). On October 29, 1993, the trial court turned down the plaintiff's request for attorney's fees because he was of the opinion that Demco acted in good faith in denying the claim by classifying the HDC–ABMT treatment as investigative and experimental—their position being substantially justified in light of the evidence in the record. In addition, the court found that based on the evidence concerning HDC–ABMT, the defendant's action could not be classified as having been taken for the purposes of harassing the plaintiff. In regard to the issue of whether the treatment was experimental or investigative, the court stated, "[e]vidence in the record, however, suggests that the procedure may be experimental and, accordingly, not covered by the defendant's health plan." The district court added that Demco's refusal to pay was not vexatious.

Plaintiff claims on appeal that he is entitled to attorney's fees as he claims he was the prevailing party in the underlying litigation. Plaintiff argues that the fact that the case was settled, in and of itself, proves that defendant's position was not justified. Defendant argues that its help in securing alternative funding from a number of people and organizations unrelated to the parties in the lawsuit, did not amount to a concession of liability on behalf of Demco. Demco explains its actions were nothing but a charitable act meant to help a fellow human being, Billy Hooper, obtain funds for his treatment. Since the settlement was not meant as an admission of liability, the defendant maintains its position that HDC–ABMT was experimental and not covered under the Demco plan.[8] The defendant points out that since the record supports its decision to deny coverage they should not be liable for the plaintiff's attorney's fees. Defendant further argues that the only way for the plaintiff to be awarded attorney's fees is if the defendant's position was determined by the court to be unjustified, or merely an attempt to harass or vex the plaintiff. Neither side addressed the issue, nor did the District Court rule, whether the settlement bestowed "prevailing party" status on the plaintiff under ERISA § 502(g)(1).

## II. ISSUE

The issue for review is whether the district court abused its discretion when it denied plaintiff's petition for attorney's fees because it found that the defendant's position was substantially justified. We, however, recognize that prior to determining if the defendant's position was substantially justified, we must determine whether the plaintiff is truly a prevailing party in light of the settlement in this case.

## III. DISCUSSION

Hooper's suit was brought pursuant to the Employee Retirement Income Security Act of 1974, which provided the district court with exclusive jurisdiction pursuant to 29 U.S.C. § 1132(e)(2). We note that the primary purpose of ERISA, to protect the participants in employee benefit plans, is achieved by "establishing standards of conduct, responsibility, and obligations for fiduciaries of employment benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b). To encourage aggrieved parties to seek redress

---

**8.** The settlement, itself, was not part of the record, but Demco argues in its brief that the settlement was not an admission of liability.

under ERISA, the statute gives the trial court discretion to award attorney's fees to a prevailing party. Under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

*Prevailing Party Status*

■ Plaintiff claims the district court committed an abuse of discretion when it failed to properly evaluate the five criteria normally used to determine whether an award of an attorney's fees is warranted under ERISA. These five factors known as the multi-factor test, are: "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions." *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 121 n. 9 (7th Cir. 1989) (citations omitted). Plaintiff further asserts that as the prevailing party he is entitled to an award of attorney's fees. Plaintiff's reasoning is that he settled his claim in return for full coverage of his medical bills, thus he claims that he "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

This multi-factor test, articulated for payment of attorney's fees to prevailing parties in civil rights claims, is not the test this Circuit uses to determine if a party that receives a settlement is a prevailing party under ERISA. *Rootberg v. Central States et al.,* 856 F.2d 796, 799 (7th Cir.1988). The problem with claims that are settled is that there are reasons for parties to settle that are wholly unrelated to the substance and issues involved in the litigation. A suit may be groundless, and settled for its nuisance value, or settled by a party for wholly gratuitous reasons, thus not justifying an award of attorney's fees. *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981). When a cause is settled or disposed of without full litigation on the merits (as in this case), this Circuit applies a two-step analysis to determine if the party prevailed in the litigation. In *In re Burlington Northern Inc.,* 832 F.2d 422, 425 (7th Cir.1987), we ruled that a party must initially prove that the outcome of the plaintiff's lawsuit must be causally linked to the achievement of the relief obtained. The lawsuit is causally linked to the relief obtained if it played a "provocative role in obtaining relief." *Nanetti v. University of Illinois,* 867 F.2d 990, 993 (7th Cir.1989) *citing DeVito,* 656 F.2d at 267. Therefore "the lawsuit must [be] a 'catalyst' or 'material factor' in obtaining concessions from the opponent and a favorable outcome to the dispute." *Id. quoting Ekanem v. Health & Hospital Corp.,* 778 F.2d 1254, 1258 (7th Cir.1985); *Stewart v. Hannon,* 675 F.2d 846, 851 (7th Cir.1982).

In the instant case, while the record is clear that the coalition of people and organizations who joined together to provide for Hooper's treatment were not required to do so but donated out of the goodness of their heart, we cannot rule that the settlement was not "causally related" to the lawsuit. On May 25, 1993, TPA advised Hooper that his HDC–ABMT would not be covered under the Demco plan. On June 23, 1993, Hooper's physician requested that TPA reevaluate its decision. On August 4, 1993, TPA again advised Hooper that HDC–ABMT treatment fell into what the plan considered experimental and investigational treatment. This suit was filed on August 16, 1993. The settlement was reached and finalized on August 30, 1993. It is not clear from the record whether there would have been a settlement had the plaintiff not filed suit. Moreover, the record does not reveal when the parties began discussing a charitable fundraising effort (the charitable settlement came two weeks after the suit was commenced, but more that three months after TPA's initial decision to deny coverage).

While the timing of the settlement indirectly supports the plaintiff's claim to be a prevailing party, the defendant's position is

bolstered by the fact that the plaintiff's evidence fell far short of convincing the trial court that the plaintiff would succeed on the merits. As stated above, the district court recognized that the evidence presented indicated that HDC–ABMT "may have been experimental and ... not covered by the plan." Moreover, the plaintiff's own expert conceded that the HDC–ABMT procedure was investigational.

While the evidence against the plaintiff's position is substantial, the case cannot be characterized as frivolous either. Although the majority of the funds obtained for the plaintiff's care came from a number of charitable sources other than the defendant, these charitable sources clearly donated the funds after the defendant solicited their aid. While the various charitable donors' intention was not to relieve Demco of potential liability, but to aid Hooper, the timing of their assistance precludes a decision that the settlement was not causally linked to the lawsuit. In light of the close proximity of time between the filing of the suit and settlement (two weeks), the suit seems to have acted as a "catalyst" for the settlement and thus satisfies the causal link requirement. *See Burlington*, 832 F.2d at 425.

Under the second step of the *Burlington* analysis, however, the suit must have prompted the defendant (the settling party) to act or cease its behavior based on the strength of the case, not "wholly gratuitously" in response to the plaintiff's claims. *Id.* We review the second step, whether the defendant acted "wholly gratuitously" under the abuse of discretion standard. *Id.; Dixon v. Chicago*, 948 F.2d 355, 358 (7th Cir.1991). Thus, we must determine whether Demco settled this case with an eye towards its possible exposure if litigation progressed, or whether their motivation to settle was "wholly gratuitous."

■ We believe that the second step of the *Burlington* test removes the prevailing party status from the plaintiff. The record reveals that Demco tried in two separate ways to obtain treatment for the plaintiff. First, defense expert Dr. Weiss tried to get Hooper enrolled in a clinical test study of the effects of HDC–ABMT. Had he been successful,

the plaintiff's treatment would have been free. Second, the defendant company, among others, was successful in organizing charitable funding for the plaintiff's treatment. Demco along with Demco employees, TPA, Manufacturers Life Insurance, the Children's Organ Transplant Association, and the University of Wisconsin Hospitals and Clinics, arranged for funding and facilities to enable the plaintiff to undergo HDC–ABMT. We are of the opinion that the nature of the defendant's actions (organizing a charitable fund drive) falls into the category of actions deemed "wholly gratuitous" and as such the plaintiff cannot be a prevailing party. That determination, however, is not the only basis for denying the plaintiff's request for fees. Even had the settlement given the plaintiff "prevailing party" status, ERISA requires the prevailing party to prove defendants presented a position that was unmeritorious.

*Defendant's Position*

The defendants rely on *Production and Maintenance Employees Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir.1992), for the standard to be applied for determining whether an award of attorney fees under 29 U.S.C. § 1132(g)(1) is warranted. In *Roadmaster*, the court concluded that the "bottom-line question" is whether an adverse party's position was "substantially justified" and taken in good faith. 954 F.2d at 1402. Section 502(g)(1) commits an award of attorney's fees to the discretion of the district court. *Id.* An award of attorney's fees under that section, will be reversed only if the court abused its discretion. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 765 (7th Cir. 1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). As we stated in *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 828 (7th Cir.1984), "[t]his discretion is not to be exercised without any criteria; it is not unlimited."

■ When a party prevails in an action under ERISA, the standard for awarding attorney's fees is the same as under the Equal Access to Justice Act. *Bittner*, 728 F.2d at 830. In *Bittner*, this court analogized a § 502(g)(1) claim to that of a request of attorney's fees under the Equal Access to

Justice Act, 28 U.S.C. § 2412(d)(1)(A), in order to provide a model to give meaning to the word "discretion" in the ERISA statute. 728 F.2d at 830. As the district court in this case properly noted, the *Bittner* standard entitles the prevailing party to reasonable attorney's fees "unless the court finds that the position of the [defendant] was substantially justified or that special circumstances make an award unjust." *Id.*

This circuit has addressed the seemingly conflicting standards of the multi-factor test (as enunciated in *Nichol*) cited by the plaintiff, and the "substantially justified" standard (from *Bittner* and *Pritchard*) cited by the defendant. As we noted in *Tesch v. General Motors Corp.*, 937 F.2d 359, 363 (7th Cir. 1991), "[w]e need not concern ourselves with choosing between the multi-factor approach and *Bittner's* 'substantially justified' standard," because both tests beget the same result, and it is "difficult to imagine a situation in which the application of one model rather than the other would alter our decision concerning the propriety of an award of costs or fees." *Id.*, citing *Nichol*, 889 F.2d at 121–22. "[B]oth tests are designed to award costs and fees to the prevailing party where there is reason to believe that the losing party engaged in litigation merely to harass its opponent." *Nichol*, 889 F.2d at 122. Further, in *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991), this court held that "[w]hichever approach is used, the bottom-line question is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?"

■ In the instant case, Demco properly denied coverage to Hooper only after seeking the advice and guidance of TPA, who sought two separate opinions from medical advisory boards. At every level, the use of HDC–ABMT was considered both "experimental" and "investigative" as those terms are defined in the exclusion section of the Demco Health Plan. Upon re-review, even with the new documentation provided by the plaintiff's doctor, UMAC came to the conclusion that HDC–ABMT was not a medical procedure generally used and accepted in the treatment

of multiple myeloma. The plaintiff's own expert, Dr. Greipp, characterized the procedure not only as controversial, but still within the investigative stages. Moreover, plaintiff provided no evidence whatsoever that HDC–ABMT was considered by anyone to be a "generally accepted" treatment as those terms are used in the Demco plan.

Further, gratuitous donations to aid a dying person cannot and does not rise to the level of satisfying the standard of prevailing party in an ERISA lawsuit. Moreover, even if we were to grant the plaintiff prevailing party status, being the prevailing party is not sufficient in and of itself to justify an award of attorney's fees. In this case the settlement entered can by no means be considered as an admission of liability by the defendant, but rather an attempt to find alternative funding for the plaintiff's medical treatment. As such, the plaintiff was not the prevailing party under the test in this Circuit. In order to warrant an award of attorney's fees, the prevailing party must demonstrate that the losing party's position was not substantially justified, or that the losing party's position was taken to harass or vex the prevailing party. *Meredith*, 935 F.2d at 128. In this case there is no evidence to support that this was Demco's intent.

Defendant relied on TPA to provide impartial and extensive reviews of claims against the Demco plan. TPA itself utilized two separate and independent medical review organizations to review and then re-review the plaintiff's claim. Therefore, even if we had decided that Hooper was the prevailing party, we would still affirm the district court's decision not to grant the plaintiff his attorney's fees. For these reasons we find no abuse on the part of the district court and affirm its decision not to award attorney's fees to the plaintiff in this case.

## IV. CONCLUSION

The record reflects that Demco acted fairly and in good faith when it declined coverage for Hooper's treatment. The information available to Demco, TPA, UMAC, and MRIA indicated that the use of HDC–ABT for multiple myeloma was experimental and still in the investigative stage of the treat-

ment's development. As Demco's position in denying coverage for Hooper's treatment was therefore "substantially justified," the trial court did not err in denying the plaintiff's petition for attorney's fees. In the two prior cases concerning HDC–ABMT, *Fuja* and *Bechtold supra*, this court articulated how difficult it is for judges to wear our judicial robes when faced with decisions that could well influence whether a person lives or dies. In this case the defendant did not coldly turn its back on its employee with a cursory "See you in court" but instead, side-stepped its own health plan by arranging for outside help for the plaintiff's medical bills. These actions are all the more respectable in light of the evidence which supported the defendant's position in the litigation.

AFFIRMED.

MANION, Circuit Judge, concurring.

I concur. I agree with the court that Hooper is not a prevailing party, but write separately to emphasize that *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) appears to have limited "prevailing party" status to parties who have obtained " 'an enforceable judgment, consent decree, or settlement giving some of the legal relief sought....' " *See Zinn v. Shalala*, 35 F.3d 273, 276 (7th Cir.1994) (Manion, J., dissenting) (quoting *S–1 and S–2 v. State Bd. of Educ. of N.C.*, 21 F.3d 49, 51 (4th Cir.1994)). In any event, Hooper cannot recover attorney's fees under ERISA because he has not demonstrated that Demco's position was not substantially justified, or that it was taken to harass or vex the prevailing party. Opinion at 294–295.