656 F.2d 264
 Gary HARRINGTON, et al., Plaintiffs-Appellees,
v.
Robert DeVITO, Director of the Illinois Department of Mental
Health, Defendant-Appellant,
and
George W. Dunne, President of the Cook County Board of
Commissioners, et al., Defendants-Appellees.
 No. 80-2070.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 29, 1981.
Decided Aug. 10, 1981.
 
 Karen Konieczny, Asst. Atty. Gen., Chicago, Ill., for defendant-appellant.
 Sally Elson, Legal Assoc. Found., Chicago, Ill., John A. Dienner, III, Asst. State's Atty., Chicago, Ill., for defendants-appellees.
 Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 Plaintiffs-appellees, pretrial detainees in need of mental health care, sued Illinois and Cook County officials under 42 U.S.C. § 1983 alleging that the defendants failed to provide necessary mental health care in the Cook County Department of Corrections. The parties negotiated for several years under court supervision to resolve the acknowledged mental health care deficiencies. Ultimately, the parties settled the case by consent order.
 
 
 2
 On October 19, 1979, the district judge awarded the plaintiffs $25,000 in attorneys' fees pursuant to 42 U.S.C. § 1988 finding that the plaintiffs had prevailed against all of the defendants. The court assessed the fee jointly and severally against Illinois and Cook County officials, but declined to apportion it at that time. Instead, the court instructed the defendants to attempt to allocate the fee themselves, but to return to court for allocation should they fail to reach an agreement.
 
 
 3
 The Illinois Department of Mental Health (Department, State, or Illinois) thereafter moved the court to determine the allocation contending that Illinois should not be required to pay any portion of the award. On June 24, 1980, the court ordered Cook County to pay 80%, and the State to pay 20%, of the fee award.
 
 
 4
 In its appeal of the allocation order, the State argues that the allocation of fees against the State constituted an abuse of discretion[1] because the plaintiffs did not prevail against it, or alternatively, even if they did prevail against Illinois, special circumstances exist which render an award against the State unjust.
 
 I.
 
 5
 Attorneys' fee awards under 42 U.S.C. § 1988 rest within the sound discretion of the trial court. Muscare v. Quinn, 614 F.2d 577, 579-80 (7th Cir. 1980); Konczak v. Tyrrell, 603 F.2d 13, 19 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).
 
 
 6
 The appellant concedes that the lack of formal judicial relief does not itself deprive the plaintiffs of prevailing party status. Attorneys' fees may be appropriate if the plaintiffs have vindicated their rights by settlement. Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir. 1978). In Nadeau, the First Circuit established guidelines for determining prevailing party status in settlement cases. Subsequently, the Nadeau test was adopted by the Eighth Circuit in United Handicapped Federation v. Andre, 622 F.2d 342, 345-47 (8th Cir. 1980). Essentially, to prevail in a settled case, the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained. Secondly, the defendant must not have acted wholly gratuitously, i. e., the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless. Nadeau v. Helgemoe, 581 F.2d at 280-81; United Handicapped Federation v. Andre, 622 F.2d at 346-47.
 
 
 7
 The first step, which requires that the lawsuit in some way have played a provocative role in obtaining relief, is a factual determination. Nadeau, 581 F.2d at 280. The appellant argues that the plaintiffs obtained no relief against the Department of Mental Health. While the consent decree itself outlines obligations, many of which relate only to the Cook County defendants, the record supports the district court's implicit conclusion that the State took specific actions in response to the plaintiff's lawsuit. Some of the State's actions taken preceded the consent order, but this does not mean that those actions were any less causally linked to the lawsuit than obligations outlined in the consent agreement itself.[2] The plaintiffs point out that five months after the suit was instituted, the Director of the Department of Mental Health sought a stay of the plaintiffs' discovery representing that the defendants were then formulating a plan to alleviate conditions the plaintiffs were complaining about. This "start-up" plan included diagnosis and placement of incoming inmates, implementation of a tripartite treatment program, and ongoing diagnosis and evaluation of the general prison population's mental health needs. This program was originally funded by a Department grant of $151,800. The Department continued to fund half of each year's operation of the Cook County Department of Corrections' mental health program since 1976, participated in the selection of an expert panel to assess conditions, paid for the panel review, and participated in the consent agreement.
 
 
 8
 Even apart from these events, the Department of Mental Health agreed to perform certain limited obligations in the consent order itself. The State agreed, inter alia, to participate in (1) any reevaluations of the mental health team occurring pursuant to circumstances specified in the order, and (2) the resolution of disputes relating to space and equipment needs for mental health screening. The Department additionally agreed to file with the court, and to submit copies to plaintiffs' counsel, reports regarding the implementation of specific provisions of the order including Department reports made pursuant to its monitoring of the program under the grant agreement with the Health and Hospitals Governing Commission. The Department argues, however, that it was obligated under Illinois law to compile grant-in-aid monitoring reports in any event. While there may be an overlap between some of the obligations imposed by the consent agreement and the Department's existing legal duties, we view the evidence of the Department's participation as a whole in this case as supporting a conclusion that the Department did take certain steps to alleviate deficiencies in mental health treatment of pretrial detainees as a result of the plaintiffs' lawsuit. Especially because all of these actions followed soon after the institution of this lawsuit, it is not unreasonable to suppose that they were causally related to the lawsuit. As the court in Nadeau noted,
 
 
 9
 the chronological sequence of events (is) ... an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit. This is particularly true where the evidence relevant to the causes of defendant's behavior is under defendant's control and is not easily available to plaintiff.
 
 
 10
 581 F.2d at 281. See United Handicapped Federation v. Andre, 622 F.2d at 347; Lackey v. Bowling, 476 F.Supp. 1111, 1115 (N.D.Ill.1979) ("That the threat and then the filing of this lawsuit at least hastened defendants' change of policy is clear.")
 
 
 11
 This case is unlike United Handicapped Federation v. Andre to the extent that the Andre plaintiffs prevailed only against local, and not federal, defendants. The federal defendants in that case took no part in ongoing negotiations and did not participate in the settlement stipulation. 622 F.2d at 345, 348 n.6. The separate dismissal stipulation executed between the plaintiffs and the federal defendants in Andre imposed no obligations whatsoever on the federal defendants. Id. at 345 n.2.
 
 
 12
 The State argues that the Department "acted gratuitously and in good faith to assist in curing a serious problem." As the court in Nadeau v. Helgemoe admonished, however, the good faith of the defendant is irrelevant because the "key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant." 581 F.2d at 280.
 
 
 13
 The second prong of Nadeau, however, does require that the defendant's actions not be gratuitous. The First Circuit recognized that the resolution of this aspect of the test is necessarily difficult:
 
 
 14
 In the present case ... there has not yet been a judicial determination of whether plaintiffs' rights were violated under traditional standards of analysis. In such circumstances, one might argue that the district court cannot meaningfully decide the legal requirements that govern defendants' conduct without conducting the very trial the consent decree was signed to avoid. However, we believe the court has had sufficient exposure to the facts and law of this case to determine, whether if plaintiffs had continued to press their claims under traditional constitutional theory, their action could be considered "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."
 
 
 15
 581 F.2d at 281 (citation omitted). In the instant case, the district court clearly did not view the plaintiffs' claims as frivolous. In fact, in its October 19th order, the court referred to its earlier finding, in a prior order placing unencumbered funds of the Cook County Department of Corrections in escrow,[3] that a substantial likelihood existed that the plaintiffs would ultimately prevail against the defendants on their constitutional claims. The court considered both State and County defendants to be responsible for providing adequate mental health care to the plaintiffs in this case. Although it never ruled upon the State's motion to dismiss, the court reviewed, and by its award implicitly rejected, the State's allegation that its role was purely voluntary. We are satisfied that the district court's conclusion was correct.
 
 II.
 
 16
 The State also urges that the court's apportionment award constituted an abuse of discretion because special circumstances rendered the award unjust, citing Chastang v. Flynn & Emrich Co., 541 F.2d 1040 (4th Cir. 1976). The court in Chastang refused to disturb the district court's denial of attorneys' fees based on special circumstances. Among the court's many justifications for its affirmance was the fact that the trustee of a pension fund had no right unilaterally to alter the pension plan terms. The State seeks to analogize that finding to its position that, under Illinois law, the Department was not at all responsible for the care and treatment of pretrial detainees in Cook County correctional facilities, and was therefore an inappropriate party defendant. Initially, this argument overlooks the fact that the Department was sued for constitutional violations. State statutes and regulations, therefore, would not necessarily have been dispositive of its obligations. More importantly, however, Chastang's conclusion did not rest solely upon the finding that the State urges. Ultimately, the court decided that "(b)ecause the plan was amended to eliminate its illegally discriminatory aspects before plaintiffs' suits were filed, they cannot be said to have derived any benefit, direct or indirect, from the litigation." Id. at 1045 (emphasis added). Interpreted under a Nadeau analysis, the Chastang court ultimately found no connection between the lawsuit and the relief obtained. We have previously found that the record in this case supports the district court's implicit finding of causal connection, and we are not persuaded that any special circumstances existed sufficient to upset the district court's award.
 
 III.
 
 17
 Appellate review of a district court's discretion is very limited. Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found. Particle Data Laboratories, Inc. v. Coulter Electronics, Inc., 420 F.2d 1174, 1178 (7th Cir. 1969). Having heard oral argument and reviewed the briefs and the record, we are convinced that the trial court's apportionment of 20% of the attorneys' fee award against the State clearly did not constitute an abuse of discretion. Cf. Maher v. Gagne, 448 U.S. 122, 129-30, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) ("Nor can we accept petitioner's contention that respondent did not gain sufficient relief through the consent decree to be considered the prevailing party. The District Court's contrary finding was based on its familiarity with the progress of the litigation through the pleading, discovery, and settlement negotiation stages. That finding was upheld by the Court of Appeals, and we see no reason to question its validity.").
 
 
 18
 The appellant contends that upholding fee awards in cases such as this will discourage settlement because "(u)nder the District Court's ruling, neither cooperation nor voluntary participation to achieve relief for the plaintiff class, will relieve defendant of attorneys' fees." While we sympathize with the State's position, we agree with the First Circuit's observation that
 
 
 19
 the argument cuts both ways. If defendants may refuse to settle a case and accept the cost of continued litigation to avoid paying attorney's fees, it is equally likely that plaintiffs' counsel, rather than receive no compensation at all for their efforts, would be willing to continue the litigation on the chance that they might cut if not eliminate their losses. We cannot decide this issue based on such honest but speculative concerns.
 
 
 20
 Nadeau v. Helgemoe, 581 F.2d at 282.
 
 
 21
 Also, we think it is appropriate to observe that counsel would ordinarily be well advised when negotiating a settlement to endeavor to reach an agreement as to all potential issues rather than relying on the hope that troublesome ones not disposed of somehow will just go away. Such an incomplete package often, not surprisingly, will have tremellose aspects.
 
 
 22
 Finally, the court's failure to explicate the precise reasons for its allocation does not imply, a fortiori, that it applied an erroneous standard as the State contends. Reviewing the award under the analysis set forth in Nadeau v. Helgemoe and United Handicapped Federation v. Andre, we find the court's award to be supported by the record.
 
 
 23
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The County defendants have not appealed the 80% apportioned to them, but they agree with the appellant that the plaintiffs did not prevail against the State. In view of our disposition of the case, we need not address the County's argument that if the plaintiffs are found not to have prevailed against the State the total award should be reduced so that the County would not have to pay the portion now allocated to the State
 Similarly, we need not decide an issue raised in oral argument, but not briefed by the parties, of whether the State's appeal is precluded by its failure to appeal the district court's original order awarding the $25,000 fee against the defendants jointly and severally. In any event, the result, if we were to raise the issue, would be consistent with the disposition we have reached in this case.
 
 
 [2]
 Whether or not the State's actions in response to the lawsuit, taken as a whole, were purely gratuitous, as the State contends, is not relevant to the first prong of the Nadeau analysis, but will be analyzed as a separate element of the test
 
 
 [3]
 That ruling was upheld by this court in an unpublished order, No. 76-1430 (Feb. 24, 1977)