**Rafaella Y. NANETTI, Plaintiff–Appellant,**

v.

**UNIVERSITY OF ILLINOIS AT CHICAGO, Defendant–Appellee.**

No. 88–1355.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1988.

Decided Jan. 31, 1989.

---

Martin J. Oberman, Gould & Ratner, Chicago, Ill., for plaintiff-appellant.

Carla J. Rozycki, Keck, Mahin & Cate, Chicago, Ill., for defendant-appellee.

Before WOOD, JR., EASTERBROOK, Circuit Judges, and GORDON, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

After two tenure reviews and the filing of a sex discrimination suit under Title VII of the Civil Rights Act of 1964, Plaintiff Rafaella Y. Nanetti received a tenure offer from the University of Illinois at Chicago (the University). Nanetti did not receive, and seeks now, the payment of her attorneys' fees.

The parties settled the discrimination suit, after the University offered Nanetti tenure at a salary of $34,720, but reserved the issue of attorneys' fees for the district court to determine. The University argued

---

* The Honorable Myron L. Gordon, Senior Judge of the United States Court for the Eastern District of Wisconsin, is sitting by designation.

that Nanetti is not a prevailing party for purposes of obtaining attorneys' fees under Title VII. The district court agreed with the University and also held that, even if she had prevailed, her fees were unreasonable. We find that Nanetti prevailed with regard to a salary increase but not with regard to the grant of tenure. We also find that the fees incurred on the successful claim were not unreasonable for the reason stated by the district court. We therefore reverse and remand to the district court to determine the sum of fees that Nanetti reasonably incurred to obtain the salary increase.

## I. FACTS

Nanetti joined the faculty of the University's School of Urban Planning and Policy in 1978 and came before the University's three tenure committees in the academic year 1983–84. At this first tenure review, a split developed between the members of the three reviewing committees and the administrative officers who headed the committees. Each committee recommended tenure while each of the three administrative officers voted against tenure. Because the split was controversial, the chancellor's office in April 1984 ordered the tenure committees to review Nanetti a second time, after her return from a fellowship at Oxford University in England. The chancellor's office described this second shot at tenure as "exceptional steps" in the tenure process.

Nevertheless, Nanetti hired an attorney in June 1984 and filed a complaint with the Equal Employment Opportunity Commission (EEOC). Her attorney attempted to persuade the chancellor to reconsider his final decision on Nanetti's tenure, and failing that, to change the tenure process itself —all these efforts were to no avail. Nanetti then obtained authority from the EEOC to file suit against the University and filed a complaint in November 1985. Nanetti took no further legal action until the entry of the settlement.

At the second tenure review in May and June of 1986, Nanetti quickly received approval for tenure. The school director recommended a salary of $31,086. Nanetti's attorney demanded that the University award back pay to Nanetti, increase her salary to the same amount she would have obtained had the University given her tenure in 1984, and also pay her attorneys' fees. The parties settled the discrimination suit at a salary of $34,720 in September 1986 but left open for litigation the question of attorneys' fees. Nanetti brought this suit for attorneys' fees under Title VII.

The district court denied attorneys' fees because Nanetti was not a prevailing party, and even if she was, "her legal fees were not reasonably incurred." Nanetti appeals.

## II. ANALYSIS

### A. Prevailing Party

■ A prevailing party in a Title VII lawsuit is entitled to an award of attorneys' fees and costs reasonably incurred. 42 U.S.C. § 2000e–5(k) (1982).[1] " 'Plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir.1981) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Thus, a party may prevail through settlement. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). When a party claims that she prevailed through settlement prior to full litigation on the merits, we apply a two-part test:

[T]o prevail in a settled case, the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained.

---

1. We apply the same standards to the Title VII attorneys' fees provision and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982). We therefore look to cases construing both provisions to decide the Title VII claim before us. *See In re Burlington Northern, Inc. Employment Practices Litig.*, 832 F.2d 422, 424 (7th Cir.1987).

Secondly, the defendant must not have acted wholly gratuitously, i.e., the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless. *In re Burlington Northern, Inc. Employment Practices Litig.*, 832 F.2d 422, 425 (7th Cir.1987) (quoting *Harrington v. DeVito*, 656 F.2d at 266–67).

The University did not challenge Nanetti's claim with respect to the second part of the test. The University did not assert that it acted gratuitously, and the district court made no specific findings with regard to the frivolity or groundlessness of Nanetti's claim. At one point in its discussion of causation, however, the district court referred to the University's denial of tenure as "wrongful," suggesting that the court did not perceive Nanetti's claim as groundless. We are convinced, based on the record, that Nanetti was not pressing a frivolous or groundless claim of gender discrimination. We find that part of the test satisfied and direct our attention to the issue of causation.

The lawsuit is causally linked to the relief obtained if it played "a provocative role in obtaining relief." *Harrington*, 656 F.2d at 267. In other words, the lawsuit must have been a "catalyst" or "material factor" in obtaining concessions from the opponent and a favorable outcome to the dispute. *See Ekanem v. Health & Hospital Corp.*, 778 F.2d 1254, 1258 (7th Cir.1985); *Stewart v. Hannon*, 675 F.2d 846, 851 (7th Cir. 1982). Whether the lawsuit caused Nanetti to obtain tenure and a salary of $34,720 is a question of fact for the district court. *See Gekas v. Attorney Registration & Disciplinary Comm'n of the Supreme Court*, 793 F.2d 846, 849–50 (7th Cir.1986). We will not disturb the district court's findings of fact unless they are clearly erroneous. *See id.;* Fed.R.Civ.P. 52(a).[2]

With regard to the offer of tenure, the district court found that the University guaranteed Nanetti a second tenure hearing before she hired an attorney, commenced proceedings with the EEOC, and brought a lawsuit in federal court. According to the district court, all of Nanetti's attempts to change the tenure process itself proved futile. The district court also found that, by granting a rare second tenure hearing, the chancellor's office "tacitly informed" the administrative officials that they should reassess their previous rejection of Nanetti's tenure bid.

We do not find the district court's findings clearly erroneous. This court will consider the sequence of events to determine whether the lawsuit caused a satisfactory outcome. *See Harrington*, 656 F.2d at 267. The sequence of events indicates that the University was prepared to give Nanetti a second chance at tenure before she brought the discrimination suit and hired an attorney. Her attorney's efforts did not hasten the date for this review or entitle her to a definite grant of tenure.

Nanetti argues that, although her lawsuit may not have caused the University to grant her a second review, it encouraged the administrative officials to change their minds and vote the second time in her favor. Nanetti's own evidence, however, suggests that the administrative officials had ample reasons, independent of the threat of legal action, for changing their minds. As Nanetti's attorney found, several members of her own department felt the first denial of tenure was unreasonable given Nanetti's capability and scholarship. She had a good teaching and publication record, and members of her own department strongly supported her. Furthermore, the split on the first set of tenure

---

**2.** At oral arguments we questioned counsel on the issue of the proper standard of review. If the lower court had held an evidentiary hearing on the issue of attorneys' fees our standard of review would have been clear and we would apply the clearly erroneous standard. The district court decided the question of attorneys' fees, however, based on a written record only, leaving the proper standard less than clear. Both sides agreed, however, that they had not

objected to the district court relying on a written record; they were satisfied that their sides were adequately presented to the district court; and they had not asked for an evidentiary hearing. Because the parties thoroughly briefed the court on the issues and agreed that the court should decide the matter based on a written record, we will treat the matter as though decided in an evidentiary hearing and apply the clearly erroneous standard of review.

panels suggests that many panel members would argue on Nanetti's behalf in a second round of evaluation. Most importantly, the chancellor's office recommended that Nanetti receive a second review. As the University admitted, the administrative officials perceived a second review to be unusual and perhaps were influenced by this factor to take a fairer look at Nanetti's record.

While Nanetti's version of what happened is plausible, she has not proven that the district court's findings were clearly erroneous. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoted in *Gekas*, 793 F.2d at 851). There is evidence to support the district court's finding that the administrative officials independently changed their minds.

█ The district court also made findings concerning the parties' dispute over Nanetti's salary. The district court stated:

As a result of her [Nanetti's] promotion, the University was prepared to pay her $31,086.00 for the 1986–87 academic year, but Oberman [Nanetti's attorney] demanded an additional $64,000, claiming that she was entitled to back pay and attorneys' fees. The parties eventualy (sic) settled on a yearly salary of $34,-720.00, which is what Nanetti would have gotten had she received tenure the first time around.

Despite this finding, the district court held that Nanetti was not a prevailing party on the issue of the salary increase because the additional $3,600 she received was not nearly as much as the amount her attorney requested. The district court concluded that the additional $3,600 was a justifiable addition to her salary and was tied to the "wrongful denial of tenure, which was remedied independently of this lawsuit."

We believe that the district court's finding with regard to the salary dispute is not clearly erroneous, but we disagree with the district court's conclusion. As this court has stated before, the recovery of even a small amount of money permits an award of attorneys' fees. *See Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir.1988). The amount of recovery secured by counsel does not determine whether the plaintiff is entitled to attorneys' fees, but whether the fees are reasonable. *Larsen v. Sielaff*, 702 F.2d 116, 117 (7th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983). Here, the district court explicitly found that the University was only willing to offer $31,086 to Nanetti and Nanetti's counsel intervened in order to get more money for her. How much the attorney actually received above the amount offered does not determine whether the plaintiff is a prevailing party.

Although the parties disagree on whether Nanetti's counsel caused the $3,600 increase or the University granted the increase voluntarily, the district court was entitled to choose the inference he found most reasonable. The district court found that the parties settled at a salary higher than the salary originally offered to Nanetti after Nanetti's attorney intervened and asked for more money on her behalf. Nanetti's counsel asserted that Nanetti had a legitimate claim for $54,000. Undoubtedly, Nanetti's claim encouraged the University to reconsider its original offer and increase Nanetti's salary to the amount she would have received had she obtained tenure the previous year. We are not convinced that the University settled because it thought the claims were a nuisance. Nanetti made enough nonfrivolous legal arguments to support a finding that the lawsuit itself caused the University to concede the additional salary. This plus the timing of the University's first offer, Nanetti's demand, and the new higher offer suggest that the district court's finding was not clearly erroneous.

The district court somewhat inconsistently concluded that Nanetti would have successfully obtained the salary increase without the intervention of her attorney because her claim was justified. Unfortunately, being right is not always synonymous with being successful in a legal

dispute. Nanetti may have deserved the additional $3,600 but the University did not immediately offer that amount. We will not speculate on whether the University would have magnanimously offered the higher salary without the intervention of Nanetti's attorney. According to the district court's findings, the parties *settled* on a higher amount than initially offered. The University did not unilaterally raise Nanetti's salary; the parties mutually agreed on the higher level of income. By concluding that Nanetti's claim was justified, the district court only confirmed that Nanetti's legal claim could have been persuasive if pursued, caused the University to reassess its position, and triggered the more favorable settlement terms. The lawsuit itself was a catalyst or material factor in the favorable increase in salary. We will accept the district court's findings but not its conclusion on this matter.

*B. THE Reasonableness of Nanetti's Fees*

■ The inquiry concerning attorneys' fees does not end after we determine whether a party prevailed. The fees requested must also be reasonable. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). We review a district court's findings regarding the reasonableness of attorneys' fees by asking whether the denial of fees was an abuse of discretion. *Burlington Northern,* 832 F.2d at 425; *Lovell v. City of Kankakee,* 783 F.2d 95, 96 (7th Cir.1986). An abuse of discretion occurs only when no reasonable person could take the view adopted by the lower court. *See Lynch v. City of Milwaukee,* 747 F.2d 423, 426 (7th Cir.1984).

The district court made two general findings with regard to the reasonableness of Nanetti's request for attorneys' fees. The district court found that the legal work done between June 1984 and May 1985 was superfluous because Nanetti could and did receive tenure during that time wholly apart from the efforts of her attorney. The district court noted that Nanetti's attorney accumulated hours even though he knew that she had already been guaranteed a second tenure review. We have already agreed with the district court that Nanetti was not a prevailing party with regard to the grant of tenure. If Nanetti is not a prevailing party with regard to a specific claim, it does not matter how reasonable the attorneys' fees incurred on that claim were. We will not address the reasonableness of the attorney hours between June 1984 and May 1985 to the extent that the hours were spent on obtaining tenure.

■ We will, however, address the district court's second finding because it affects the claim on which Nanetti prevailed. The district court found that Nanetti's fees were not reasonable because her attorney prolonged the case unnecessarily over the issue of attorneys' fees. We do not believe that the record supports the district court's finding. The lawsuit extended over a four-year period partly because the parties waited for the second tenure review to take place before moving on the legal claims. The parties, very practically, did not clog up the court docket with unnecessary discovery and motion practice. Once Nanetti received tenure, counsel on both sides worked on settlement. Nanetti received the official offer of tenure in November 1985 and the parties negotiated settlement between June and September of 1986. Furthermore, Nanetti's attorney agreed to separate the issue still in dispute—attorneys' fees—from the rest of the settlement. We think this was a reasonable way to hasten the claim along.

Although we have seen parties resolve claims more expediently, the record is void of any evidence that Nanetti's attorney unduly delayed the process over attorneys' fees. As our decision today indicates, Nanetti's claims had legal merit. An attorney can not be faulted for pressing reasonable claims. Even if Nanetti's attorney had been responsible for some delay, his conduct does not terminate Nanetti's right to attorneys' fees established as a result of her opponent's independent wrong. *See In re Central Ice Cream Co.,* 836 F.2d 1068, 1074 (7th Cir.1987). With deference to the district court, we do not believe that Nanetti's attorney prolonged the suit over the

issue of attorneys' fees. We find that the district court abused its discretion when it found that Nanetti's fees were unreasonable because her attorney caused an unnecessary delay.

Nanetti prevailed with regard to the increase in salary. As she has demonstrated, $3,600 is a significant amount of money, particularly when it is part of a base salary used to calculate future raises. If Nanetti receives an additional $3,600 every year of her tenure, above the amount she would have received had she accepted the University's original proposal, she has in effect gained an annuity. An annuity lasting for ten years at 7% interest (per year), for example, has a present value of approximately $25,000. This is certainly not an insignificant amount. Nanetti is entitled to receive therefore a just and reasonable portion of her attorneys' fees.[3] In its award of attorneys' fees on remand, the district court should be mindful of Nanetti's right to receive payment for fees incurred for "work associated with the development of the theory of the case" as well as fees directly incurred in the negotiation of the salary dispute. *See Webb v. County Bd. of Educ.,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985).

We affirm the district court's decision with regard to the denial of attorneys' fees in connection with the tenure grant and reverse with regard to the denial of attorneys' fees in connection with Nanetti's salary increase. Because Judge Duff is most familiar with the issues of this case, under the authority of Circuit Rule 36, we remand the case to Judge Duff for a determination of the amount of fees to which Nanetti is entitled in keeping with this decision.

AFFIRMED IN PART AND REVERSED IN PART.

---

**3.** Although Nanetti was represented by two attorneys in this lawsuit, we have referred to her counsel in the singular. This, however, does not imply that the district court should not take both attorneys' hours into consideration on remand.