David BAIRD, et al., Plaintiffs,

v.

The CONSOLIDATED CITY
OF INDIANAPOLIS, et
al., Defendants.

No. IP 87–111 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 25, 1993.

Entry on Motion to Amend, Aug. 17, 1993.

Stephen Laudig, William R. Groth, Fillenwarth Dennerline Groth & Baird, Virginia Dill McCarty, Landman & Beatty, Indianapolis, IN, for plaintiffs.

David L. Rimstidt, Wayne C. Ponader, Bose, McKinney & Evans, Indianapolis, IN, for defendants.

### ENTRY

BARKER, District Judge.

This matter comes before the court on the plaintiffs' Second Motion to Award Interim Costs, Expenses, and Reasonable Attorney Fees.

*I. Background*

The plaintiffs filed a complaint in 1987 claiming that the City of Indianapolis 1982 General Ordinance governing the election of City–Council members (General Ordinance 128) was unlawful under the Fourteenth and Fifteenth Amendments to the United States Constitution, Article I, Section 23 and Article II, Section 1 of the Indiana Constitution, and Ind.Code § 36–3–4–3. In 1989, the plaintiffs amended their complaint, adding the claim that the 1982 ordinance violated the Voting Rights Act, 42 U.S.C. § 1973.[1] In its Amended Complaint, the plaintiffs sought the following relief:

[T]hat the Court enter judgment declaring General Ordinance 128, 1982 and the election of four at-large members of the City–County Council be declared [sic] unconstitutional ... and that the ordinance is therefore null and void,

(a) Enjoining the Defendants, their agents and successors in office, and all persons acting in concert with them, from administering, implementing, enforcing, or conducting any election under the provisions of the ordinance;

(b) Ordering the Defendants to devise new City County Council districts which meet the requirements of Federal and State law. If the defendants fail to devise such a plan the Court should order a redistricting plan into effect. [sic]

(c) Declaring that the present scheme of electing the four-at-large City County Councilors is unconstitutional and violates the Voting Rights Act.

The plaintiffs did not request monetary relief.

On September 25, 1990, the parties entered into the Joint Stipulation and Consent Decree for the stated reason [2] of "desiring to avoid the necessity and uncertainty of a trial...." That consent decree provided (in part):

1. Indiana Statute does not require the Indianapolis–Marion County City–County Council (hereinafter Council) to redistrict until 1992.

2. The parties agree that a redistricting will occur before it is required by statute and before the next election for the Council.

\* \* \* \* \* \*

5. The 1991 redistricting of the Council will be based on the 1990 U.S. Census data in a manner which results in districts which are comply with all pertinent state

---

1. Oddly, although the plaintiffs did not plead violations of the Voting Rights Act in their original Complaint, they nonetheless included the following request for declaratory relief: "[T]hat the present scheme of electing the four-at-large City County Councilors is unconstitutional and violates the Voting Rights Act." The plaintiffs contend they did not plead a Voting Rights Act violation in their Complaint because it was only

after the Complaint was filed that "[d]iscovery disclosed likely Voting Rights Act violations...."

2. Although not memorialized in the Joint Stipulation and Consent Decree, the parties' agreement was reached for the additional reason that the then-impending 1990 Census data would limit if not render moot any adjudication by the Court based on 1980 Census data.

statutes and do not violate the United States Voting Rights Act, 42 U.S.C. [sic] 1973(a) *et seq.* The Defendants agree that the new districts will abide by commonly recognized standards for redistricting including: a) [sic] non-dilution of minority voting strength; 2) contiguity; 3) compactness; and 4) respect for the principle of one person, one vote.

6. The Council will be given the opportunity to abolish, or change the manner of voting for, the four (4) at-large seats on the Council.

\* \* \* \* \* \*

10. Plaintiffs, along with any other interested persons or parties, shall have the right to submit their own proposed redistricting plan to the Council for its consideration.

11. Plaintiffs, along with any other interested persons or parties, shall have the right to submit their own proposed ordinance with regard to abolishing, or changing the manner of voting for, the four (4) at-large seats on the Council.

\* \* \* \* \* \*

18. Before any council redistricting ordinance or ordinance abolishing, or changing the manner of voting for, the four (4) at-large seats on the Council is finally enacted by the City–County Council it shall be submitted to this Court for review and approval after a public hearing.

\* \* \* \* \* \*

22. The Court, [after the parties have submitted redistricting plans], will approve an accelerated time schedule, if necessary, to allow any redistricting plans and proposed ordinances with regard to abolishing, or changing the manner of voting for, the four (4) at-large seats on the Council to be reviewed by the Plaintiffs in a meaningful manner before any Council redistricting ordinance is approved for final adoption by the Council and also to allow the primary election to be held at a postponed date as provided herein.

23. Plaintiffs shall present any new challenge to the redistricting ordinance or ordinance abolishing, or changing the manner of voting for, the four (4) at-large seats on the Council by way of an amended complaint in this action.

24. The parties may use any and all discovery and other pleadings, including all exhibits, filed in this cause, just if these documents had been filed in this cause in 1991....

25. Plaintiffs specifically reserve the right to petition this Court for an award of attorneys fees and costs related to this action as provided for in the Voting Rights Act.

Joint Stipulation and Consent Decree, Approved September 25, 1990 (strikeout in original). In sum, as described by the defendants, "In the Joint Stipulation, the Plaintiffs agreed to dismiss the claims contained in their original and amended complaints, and the Defendants in turn agreed to redraw the Council districts a year earlier than required by state statute based on the 1990 Census and conduct the 1991 Council election using these new districts." .

Five months later, the parties established a schedule for determining whether or not this litigation would be continued. In its Pre–Trial Entry and Order of February 25, 1991, the Court approved the parties' agreed litigation schedule and authorized the defendants to redistrict in 1991, based on the 1990 Census data, finding Ind.Code §§ 36–3–4–3, 3–11–1.5–32, 1–1–3.5, and 3–10–1–3 to be superseded.

The Council considered various redistricting proposals, conducted the appropriate hearings, and finally adopted a proposal that created seven African–American single member districts with African–American population majorities of 60–61%. Thus ended the first stage of this litigation.

The second stage of this case began when the plaintiffs filed a second Amended Complaint challenging the at-large provisions of the new 1991 ordinance and a Motion for a Preliminary Injunction. The Court conducted a hearing on the motion and determined that the plaintiffs had failed to demonstrate a likelihood of success on the merits of their second Amended Complaint. Consequently, the Court denied plaintiffs' request for a preliminary injunction. One month later, the

Court granted defendants' motion for summary judgment and dismissed the second Amended Complaint. The plaintiffs appealed that decision to the Seventh Circuit Court of Appeals, where the summary judgment was affirmed. The plaintiffs thereafter petitioned for *certiorari* in the Supreme Court of the United States; only a few days ago, the Supreme Court denied that petition.

Shortly after this Court denied plaintiffs' Motion for a Preliminary Injunction, plaintiffs filed a (second) motion for attorney's fees, claiming to be the "prevailing party." (The first motion, filed October 16, 1990, was stayed on November 20, 1990 "pending completion of the actions contemplated in the Consent Decree.") The defendants opposed the motion for fees, claiming that the plaintiffs had failed to materially alter the legal relationship of the parties in a matter which Congress sought to promote by its adoption of the fee-shifting provisions. More specifically, the defendants claimed that the plaintiffs neither succeeded on any significant issue, obtained the relief sought, proved that their lawsuit was casually linked to the achievement of the relief obtained, nor that the defendants' actions were anything but "gratuitous."

## II. Discussion

The plaintiffs do not claim they were "prevailing parties" in the second stage of this case. Rather, they contend that the Joint Stipulation codified at least a partial victory for the plaintiffs, and accordingly, seek attorney's fees and costs relevant to the issues presented in the first stage of this litigation only.[3] *See Busche v. Burkee,* 649 F.2d 509, 521 (7th Cir.) (a plaintiff "need not prevail on every issue to be awarded attorney's fees under § 1988. Indeed, such a requirement would 'stifle the presentation of innovative causes of action and would force courts to

---

3. Section *l*, subsection (e) of the Voting Rights Act, 42 U.S.C. § 1973*l* (e), provides:
   In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendments, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
   The Civil Rights Act fee-shifting provision, 42 U.S.C. § 1988, similarly provides:

rule on every issue in a case, even if its ruling would be redundant.'."), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978).

## I.

### Prevailing Party

■ To qualify as a prevailing party under 42 U.S.C. § 1988, a plaintiff must succeed on a significant issue in litigation which achieves some of the benefits the party sought in bringing suit. *Hensley v. Eckerhart,* 461 U.S. 424, 443, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). A plaintiff may also merit prevailing party status when relief is obtained through a settlement rather than a formal judgment. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). When a cause is settled or a disposition of claims is achieved without full litigation on the merits, this court applies a two-part test to determine prevailing party status. First, the plaintiff's lawsuit must be casually linked to the achievement of the relief obtained. Second, the suit must have prompted the defendant to act or cease its behavior; the defendant cannot have acted "wholly gratuitously" in response to the plaintiff's claims. *In Re Burlington Northern, Emp. Practices Lit.,* 832 F.2d 422, 425 (7th Cir.1987); *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

*Dixon v. Chicago,* 948 F.2d 355, 357–58 (7th Cir.1991); *see Metro Pittsburgh Crusade for Voters v. Pittsburgh,* 964 F.2d 244, 250 (3rd Cir.1992) (test of whether voting rights plaintiffs succeeded is "whether the fee petitioner achieved some of the benefit sought by the party bringing suit").

> In any action or proceeding to enforce a provision of [the civil rights laws] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Both parties agree that a long line of federal decisions has uniformly recognized that there is no substantive difference between the Voting Rights Act attorney's fees provision and the Civil Rights Act attorney's fees statute.

*A plaintiff must succeed on a significant issue in litigation which achieves some of the benefits the party sought in bringing suit.*

■ Here, the court concludes that the plaintiffs succeeded in convincing the defendants to abandon the 1982 ordinance and redistrict one year early, which resulted in the 1991 election being held in accordance with the new ordinance.[4] Absent a concession by the defendants, new Council members would not have been elected under a new ordinance until 1995. A rescission of the 1982 ordinance was part of the relief sought in the plaintiffs' Amended Complaint, which was a significant achievement.

*A plaintiff's lawsuit must be causally linked to the achievement of the relief obtained.*

The question of causation—whether the lawsuit in some way played a provocative role in obtaining relief—is a factual determination. *DeVito,* 656 F.2d at 267. The parties have not requested a hearing on this issue, nor does the Court believe one is necessary. Based on the Court's monitoring of events preceding the execution of the Joint Stipulation, it is clear that the plaintiffs' efforts yielded the relief obtained. Further, causation is evident from the face of the Joint Stipulation, which states that the settlement was entered into "to avoid the necessity and uncertainty of a trial in this matter...."

Defendants do not argue that they would have voluntarily and prematurely abandoned the 1982 ordinance and redistricted in 1991 had not the plaintiffs filed this lawsuit. Rather, the defendants assert "the Council was required to redistrict in 1992 and would have done so based on the 1990 Census notwithstanding Plaintiffs' lawsuit." This clearly suggests that, indeed, the defendants would not have redistricted until 1992 (after the next election) but for the plaintiffs' lawsuit. Had plaintiffs not filed this lawsuit, defendants would not have redistricted one year early, and the new Council members

would not have been elected under a new redistricting plan until 1995. Plaintiffs are entitled in these respects to be characterized as "prevailing parties."

*The suit must have prompted the defendant to act or cease its behavior; the defendant cannot have acted "wholly gratuitously" in response to the plaintiff's claims.*

■ Whether an action is "gratuitous" under the "prevailing party" analysis turns in part on the strength of plaintiffs' case. To be deemed "prevailing parties," the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless. *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981). "A suit is frivolous if it has no reasonable basis, whether in fact or in law." *Gekas v. Attorney Registration & Disciplinary Com. of Supreme Court,* 793 F.2d 846, 850 (7th Cir.1986) (citations omitted).

As discussed above, plaintiffs' lawsuit prompted defendants to enter into the Joint Stipulation and to act in accordance with the parties' consent decree. Furthermore, the issues raised in plaintiffs' first Amended Complaint were not frivolous, unreasonable, or groundless. As this Court recognized in its Entry of April 25, 1991:

> ... The court could almost take judicial notice of the fact of such [widespread effects of discrimination in Indiana]. Indeed, the evidence on this point admitted at the hearing went largely unrebutted. The court also would note that the prior districting scheme initially challenged in this litigation, which only provided for what were considered four black majority districts, would have likely been subject to very serious Voting Rights Act challenges.
>
> It was the court's hope that, by entering the September 25, 1990 consent decree, the Council would take advantage of the opportunity to redistrict itself on the basis of current census data in order to achieve more proportional representation and thus comply with all the relevant constitutional

---

4. There are now seven, as opposed to the original total of four, Council members holding office from districts containing a majority of African-American voters, and eleven, in contrast to seven

Council members, holding office from districts containing a majority of registered Democratic voters.

and statutory requirements. It appears to this judge that the Council has done that, specifically by adding three black majority seats....

The relief obtained by the plaintiffs was neither procedural nor *de minimis.* Thus, the Court deems the plaintiffs to be "prevailing parties" in the first stage of this litigation, thereby qualifying them for benefits under the fee-shifting statutes.

## II.

### Amount of Attorney's Fees
### Expert Witness Fees

The plaintiffs have requested, in addition to attorney's fees, expert witness fees, claiming that they had to hire an expert witness when the defendants refused to admit certain "technical" portions of this case. The plaintiffs stated that they were seeking these costs in the event that the Supreme Court determines that *West Virginia University Hosp., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) does not apply to Voting Rights Act cases or should Congress amend the Voting Rights Act or § 1988 to allow explicitly for attorney's fees *and* expert witness fees.

As recently as 1989, plaintiffs would have been entitled to expert witness fees under *Friedrich v. Chicago,* 888 F.2d 511 (7th Cir.1989) (hereinafter *Friedrich I*). However, in 1991, the Supreme Court decided in *West Virginia University Hosp., Inc. v. Casey* that fees for services rendered by experts in civil rights litigation may not be shifted to the losing party as part of "a reasonable attorney's fee" under § 1988. *Casey,* 499 U.S. at 84–102, 111 S.Ct. at 1140–1148. Shortly after deciding *Casey,* the Supreme Court vacated the Seventh Circuit's decision in *Friedrich I,* and remanded the case for further consideration in light of *Casey.* On remand, the Seventh Circuit vacated the district court's order awarding expert witness fees in excess of $30.00 per day, and remanded the case to the district court for a determination of expert witness fees to be awarded at $30.00 per day. *Friedrich v. Chicago,* No. 88–3043, 1993 WL 34959, 1993 U.S.App. LEXIS 1293 (7th Cir. January 27, 1993) (unpublished).

Under the teachings of *Casey,* plaintiffs here are not entitled to expert fees under § 1988. In addition, in light of the holding of *Casey* and the fact that the Voting Rights Act attorney's fee provision and the § 1988 fees statute are virtually identical, the Court concludes that plaintiffs are not entitled to expert witness fees as part of its attorney's fees award either under the Voting Rights Act or § 1988. *See Gray v. Phillips Petroleum Co.,* 971 F.2d 591 (10th Cir.1992) (citing *Casey* and *Friedrich*).

### Attorney's Fee Enhancement

The plaintiffs have also requested an enhancement of reasonable attorney's fees. The plaintiffs made that request in 1991, prior to the Supreme Court's decision in *Burlington v. Dague,* — U.S. —, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In *Dague,* the Supreme Court reversed an appellate court's affirmance of an attorney's fee enhancement, reasoning that:

> Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case). To engraft this feature onto the lodestar model would be to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it. Contingency enhancement is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee.

*Id.* — U.S. at —, 112 S.Ct. at 2643. Courts that have applied *Dague* and its rationale to prohibit enhancements in Title VII cases, *Eirhart v. Libbey–Owens–Ford Company,* 996 F.2d 846 (7th Cir.1993), as well as in Voting Rights Act cases, *Jeffers v. Clinton,* 992 F.2d 826 (8th Cir.1993), inform and shape this Court's analysis and decision herein.

Concluding that *Dague, Eirhart,* and *Clinton* are applicable here, the court finds that the plaintiffs are not entitled to an enhancement of their entitlement to a reasonable attorney's fee.

*Attorney's Fee Calculations*

The plaintiffs have briefed the issue of what constitutes reasonable attorney's fees in this case and have submitted supporting documentation. The defendants, however, have failed to address this issue in their response brief. Nevertheless, the Court concludes that an evidentiary hearing on this instance would be helpful in determining the appropriate amount of reasonable attorney's fees.

Accordingly, the Court hereby refers this issue to Magistrate Judge J. Patrick Endlsey for an evidentiary hearing and recommendation as to an appropriate and reasonable attorney's fee, in view of the above-explicated rulings. Unless the parties reach a stipulated settlement of this issue within ten days from the date of this Entry, the Magistrate Judge shall set the matter for hearing and enter his findings and conclusions and recommended judgment within 60 days from the date of this order. In view of the length of time this case has reposed on the court's docket (including the time during its pendency on appeal), extensions of time to complete this final stage of the litigation will only permitted upon a showing of *extraordinary* need.

It is so ORDERED.

## ENTRY ON MOTION TO AMEND

This matter comes before the court on the plaintiffs' Motion to Alter or Amend Judgment of June 25, 1993.[1]

On June 25, 1993, the Court referred the issue of amount of attorney fees to Magistrate Judge J. Patrick Endsley for an evidentiary hearing and recommendation as to what amount would be an appropriate and reasonable attorney's fee. Plaintiffs thereafter filed a motion with the court seeking a ruling on whether certain expert witness fees are recoverable under Fed.R.Civ.P. 37(c). Defendants have responded to that motion by stating that the plaintiffs' request is frivolous and have moved for sanctions against the plaintiffs for filing that motion.

1. Plaintiffs' requested in their motion, "pursuant to Trial Rule 59(e), that the Court rule on that portion of Plaintiffs' fee request, or refer it to Magistrate Patrick J. Endsley for evidentiary

Federal Rule of Civil Procedure 37(c) provides as follows:

**(c) Expenses on Failure to Admit.** If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(A), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

Rule 37(c) lacks both the "shall be allowed as of course" language of Rule 54(d) and the "presumption that the prevailing party shall recover costs developed in the prior equity practice and usage." *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 516 F.2d 772, 777 (7th Cir.1975). Further, because there are several grounds under which district judges should perhaps deny such requests, *see* Fed. R.Civ. p. 37(c), and because Rule 37(c) does not allow such fees as a matter of course, "district judges have 'almost absolute discretion under this rule.'" *Insurance Ben. Admrs., Inc. v. Martin*, 871 F.2d 1354, 1361 (7th Cir.1989) (citing *Popeil Brothers*).

■ The denied requests, according to the plaintiff's characterizations, related to the "technical portion of the Plaintiff's case regarding statistical analysis and expert opinions needed to establish a claim under the Voting Rights Act." Those requests were as follows:

2. Admit that blacks in Marion County are a sufficiently numerous and geographically compact group to make a majority in at least one single member city council district constituting one fourth (¼th) of Marion County.

hearing at the same time as the amount of prevailing parties' fees hearing, if the case is not settled by the parties."

3. Admit that black voters have never elected their candidate for the at-large seats.

4. Admit that Black voters in Marion County vote the same way in most elections.

5. Admit that white block voting will normally defeat the combined strength of Black voters plus any white "crossover" votes.

6. Admit that Marion County blacks do not have an equal opportunity to participate in the political process and to elect candidates of their choice in the at-large Council race because of the at-large system.

7. Admit that there has been a history of official discrimination against Blacks in Indianapolis in public education and housing.

8. Admit that the State of Indiana and Marion County has in the past discriminated against Marion County Blacks by limiting their access to education.

\* \* \* \* \* \*

15. Admit that there is disparity in literacy rates by race.

16. Admit that there is a prohibition on single-shot voting in the at-large council race.

In January of 1989, the defendants responded to requests 2, 3, 4, 5, 15, and 16 by stating that they could not truthfully admit or deny those requests because either they did not have that information and the information was not readily available, or they did not understand the question. The defendants summarily denied requests 6, 7, and 8.

The bulk and thrust of the plaintiffs' requests concern the issue of minority voter dilution and Voting Rights Act violations, issues that were not pleaded until October of 1989, some nine months after the defendants filed their responses to the requests at issue. Further, these questions regarding statistical analysis and expert opinion concerned information not readily available to the defendants and would have required more than a reasonable inquiry to discover. *See* 8 C.A. Wright and A.R. Miller, *Federal Practice and Procedure* § 2290 at 805–806 (1970); *see also Martin v. Mabus*, 734 F.Supp. 1216, 1224–25 (S.D.Miss.1990) ("For example, the

Plaintiffs requested the Defendants to admit that 'numerous white voters vote for white candidates simply because they are white and against black candidates because they are black.' The Defendants, in order to respond to that request, would be required to go beyond a 'reasonable inquiry,' and cannot be penalized for failure to admit such."). Additionally, as to the "Denied" requests, numbers 6, 7, and 8, the defendants clearly had reasonable grounds to believe that they might prevail on those matters at trial.

Upon finding the admissions sought, at the time they were sought, were not of substantial importance, that the defendants had reasonable grounds to believe that they might prevail on these issues, and that the defendants had other good reasons for not admitting to the requests, the court denies the plaintiffs' request for expert fees under Rule 37(c).

Motion for Sanctions

The defendants have moved for sanctions claiming that the plaintiffs' request for Rule 37(c) fees is legally frivolous, and because a reasonable inquiry would have turned up *Martin v. Mabus*, a case the defendants claim is dispositive on this issue, Fed. R.Civ.P. 11 sanctions are appropriate. The plaintiffs have not responded to the defendants' motion (filed only 16 days ago), but the court finds the motion for sanctions to be without merit and denies it as such *sua sponte*.

■ As noted above, the plaintiffs' request for expert fees is without merit, but the court does not find that the plaintiffs' actions warrant sanctions. The Seventh Circuit has not yet opined on whether a failure to acknowledge binding adverse precedent violates Fed. R.Civ.P. 11, yet it is clear that attorneys must make a "reasonable inquiry" into whether a position is "well grounded in fact and is warranted by existing law" or assert "a good faith argument for the extension, modification, or reversal of existing law." *In re Hendrix*, 986 F.2d 195, 201 (7th Cir.1993) (citing *Mays v. Chicago Sun–Times*, 865 F.2d 134, 139 (7th Cir.1989) (recent Seventh Circuit precedent doomed appeal, and because a reasonable inquiry would have uncovered that opinion, court directed counsel to submit a statement as to why he should not

be sanctioned). However, contrary to the defendants' assertions, a district court case out of the Southern District of Mississippi is not "dispositive on this issue" nor "controlling" in this court, and a failure to find or cite that case is not sanctionable. *See* Defendant's Response to Plaintiffs' Motion and Request for Sanctions, p. 7. The Seventh Circuit has not often opined on Rule 37(c) standards, nor has it applied Rule 37(c) to a set of facts similar to those at bar. It has, however, indicated that district courts have "almost absolute discretion" in such matters, leaving obvious room for litigants (such as the plaintiffs) to argue such issues.

Accordingly, the defendants' motion for sanctions is denied.

It is so ORDERED.